Beecher D. STEELE, Plaintiff-Appellee,

v.

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant-Appellant.**

**No. 74–1366.**

United States Court of Appeals, Sixth Circuit.

Dec. 11, 1974.

Smith H. Tyler, Jr., Dinsmore, Shohl, Coates & Deupree, Frank C. Woodside, III, Cincinnati, Ohio, for defendant-appellant.

C. Richard Grieser, Tyler, Richards, Grieser & Schafer, James B. Blumenstiel, Columbus, Ohio, for plaintiff-appellee.

Before WEICK, EDWARDS and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

Louisville and Nashville Railroad Company [L&N] has appealed from a judgment entered in the District Court upon a jury verdict in favor of plaintiff-appellee Steele, in the amount of $64,160, awarded in an action for damages for personal injuries brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51.

Steele was an experienced switchman employed by L&N since 1952. He had four years' previous experience working for the Baltimore & Ohio Railroad Company.

Steele sustained an injury to his back on June 30, 1967, at switch number 21 in the D yard of the L&N's DeCoursey yards at Latonia, Kentucky, where he was a member of a three-man crew engaged in switching railroad cars.

In order to throw a switch it was necessary for Steele to squat down, take hold of the ball at the end of a manual lever, lift the lever up to a vertical position, and then push it over to complete the 180° arc.

Just prior to his injury Steele had thrown this particular switch twice, without incident, although he did testify that it was hard to throw. He testified that in throwing the switch the third time he got it up to about a 45° angle—

. . . when it just seemed like it locked and it felt like somebody stabbed me in the back with a knife or ice pick or something, but the switch gave and I shoved it over.

Steele did not claim that he was struck by the lever. After his injury his fellow employees had no difficulty in throwing the switch.

Steele was taken to St. Elizabeth Hospital in Covington, Kentucky, and released after x-rays were taken. He returned to work on the following day. His condition, however, gradually deteriorated, with complaints of low-back and leg pains. On May 6, 1968 a lumbar laminectomy was performed for a herniated disc. While there was some improvement following the surgery Steele's condition again deteriorated with the same complaints. Again, surgery was performed on his back on January 13, 1971.

Steele claims that he has permanent back and leg problems which have resulted in his missing work, and decreasing his physical activities, including sexual and social activities with his wife. However, L&N has provided him with sedentary work, at which he is presently engaged. No issues are raised in the appeal with respect to his back injuries or with respect to the amount of the verdict.

Nearly five years after his accident, namely, on March 1, 1972, Steele suffered an acute myocardial infarction. His original complaint sought to recover damages only for injuries to his back. After his heart attack, however, he amended his complaint in order to allege that his heart attack resulted from the incident occurring on June 30, 1967.

In its appeal L&N raises two issues, namely:

1—That the District Court erred in denying its motions for a directed verdict on the ground that it had no actual or constructive notice of an unsafe place to work; and

2—That the District Court erred in refusing to strike testimony of Dr. Dominick D. Davolos, plaintiff's expert, because his—

. . . answer to the hypothetical question was based on facts not in evidence and . . . refusing to strike the testimony of Dr. Davolos as not probative and incompetent as an inference based on an inference.

I

■ In resolving the issue whether the District Court erred in not directing a verdict in favor of L&N, we must view the evidence, as well as inferences properly deducible therefrom, in the light most favorable to the plaintiff. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949); Miller v. Cincinnati, New Orleans & Texas Pac. Ry., 317 F.2d 693, 700 (6th Cir. 1963).

The Supreme Court has stated the test as follows:

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.

Rogers v. Missouri Pac.R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

We have stated that the question is—

. . . [W]hether the railroad, by failing to exercise all reasonable care, participated in any manner to effect or permit the unsafe condition.

Bridger v. Union Ry., 355 F.2d 382, 386 (6th Cir. 1966).

■ There was some evidence of insufficient ballast of the roadbed around the ties on which the switch was located; that the roadbed sloped down to the east of the switch stand and that there was a lack of ballast at the end, and no retaining wall to hold the ballast; and that the ballast was continually shifting. When the ties are not properly ballasted the switch stand and the rails will move, causing the switch to bind or making the lever hard to throw. Also, we do not

find proof of regular inspection of the switches and ballast.

We are of the opinion that this evidence was sufficient to take the case to the jury and that the District Court did not err in refusing to direct a verdict. Webb v. Illinois Central Ry., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); Atlantic Coast Line R.R. v. Collins, 235 F.2d 805 (4th Cir. 1956), cert. denied, 352 U.S. 942, 77 S.Ct. 265, 1 L.Ed.2d 238 (1956).

■ The evidence in F.E.L.A. cases is viewed with great liberality. Gallick v. B&O R.R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

## II

■ The hypothetical question finally propounded to Dr. Davolos did not assume the fact that prior to his injury Steele had arteriosclerosis. However, in answering the question Dr. Davolos testified:

> I believe there is a very strong probability that the injury, the surgical procedures, the pain, mainly the physical inactivity—very important—personal frustration, the economic frustration and the duress of unemployment, played a strong role in accelerating the course of any preexisting coronary heart disease that may have been present; and the fact that he had been off for a month before the coronary would strongly suggest to me that these factors played a role in precipitating the myocardial infarction. (38a)

Doctor Davolos further testified:

> In my own personal experience I am aware that the withdrawal of this kind of activity very often accelerates preexisting heart disease.

THE COURT: Doctor, that's the second time. Did you get in that hypothetical anything that led you to believe that he had a preexisting heart disease before 1967?

THE WITNESS: Well, I think that we can deduce this logically from the fact that he is a male 45 that had a myocardial infarction. The probability that he would have had coronary arteriosclerosis prior to '67 is about 95 percent.

THE COURT: All right. Go ahead. I am sorry to interrupt, but I had to get that clear for everybody's sake.

THE WITNESS: Thank you, sir. (39–40a)

Dr. Davolos' testimony was corroborated in some particulars by two doctors called by the defendant who testified by way of deposition. They were Doctor C. C. Hugan and Doctor John C. Holmes. The deposition was not in evidence at the time when Dr. Davolos testified, but it was later admitted in evidence. Both of these doctors gave their opinion that Steele had arteriosclerotic heart disease which involved a gradual narrowing of the blood vessels, over a long period of time. Dr. Holmes thought that the disease began many years ago.

Doctors Hugan and Holmes, however, disagreed with Doctor Davolos that the accident and the various stresses which followed it had anything to do with Steele's heart attack. They were of the opinion that he would have suffered the heart attack without the accident and the stresses which followed it.

■ It was for the jury to pass upon the credibility of the medical experts.

■ In our opinion the evidence of Steele's injury to his back alone would have supported the amount of the verdict.

The Court instructed the jury on the subject of the heart attack as follows:

> Now, you should consider each opinion received in evidence in this case, give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon such education or experience or if you should conclude that the opinion is not based on a fact or if you conclude that the reasons given in support of the opinion are not sound or if you

feel that it's outweighed by evidence, other evidence in the case, you may disregard the opinion of any expert or experts accordingly. (Tr. 668)

The cardinal rule of damages is this: We don't guess. We don't speculate. We don't conjecture. We put the burden of proof on the plaintiff by a preponderance in connection with any question of damage we are considering and only make an award if that burden of proof has been established; . . . . (Tr. 676)

We are not attempting to single out anything at all here, but this in connection with this heart problem in this case. The law takes the plaintiffs as it finds them; and in dealing with the question of what item or items resulted from a given incident the question is not what would the incident have done to the ordinary person. The question is what injury to this particular plaintiff is involved and did this accident play a part in producing that injury. (Tr. 677)

.    .    .    .    . .

So a defendant is not responsible for the natural, congenital or geriatric or aging defects of any plaintiff; nor is a defendant responsible for the normal progress of any such defects or ailments, if any.

So you will not award to the plaintiff any damages relating to or resulting from any natural or normal ailment or defect or the natural or normal progression thereof.

The mere fact that the plaintiff suffered a heart attack—there is no dispute about the fact that he suffered a heart attack, March the 1st—doesn't permit you to infer simply from that fact that the defendant was or is in any way legally responsible for that heart attack; and if you find that the defendant was negligent but also find from a preponderance of the evidence that the plaintiff's heart attack would just as likely have happened in the absence of any negligence on the part of the defendant, then the plaintiff could not recover damages for that heart attack or any items reasonably connected therewith.

Once again, in considering any item of damage, if you find, the evidence is in equipoise, even Stephen, so you can't say it leans in favor of the plaintiff, the plaintiff having the burden of proof would lose in respect to that item and you should not award any compensation in respect thereto. (Tr. 677–678)

We find no error in the denial of the motion to strike the testimony of Doctor Davolos.

Affirmed.