The ATCHISON, TOPEKA & SANTA FE
RAILWAY CO., Appellant,

v.

Allen J. SCOTT, Appellee.

No. 7791.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 20, 1977.

Rehearing Denied Feb. 17, 1977.

Chilton O'Brien, Beaumont, for appellant.

J. Donald Bowen, Houston, for appellee.

KEITH, Justice.

On rehearing, our prior opinion is withdrawn and this opinion substituted in lieu thereof.

Defendant below appeals from an adverse judgment rendered after a jury trial. Plaintiff below brought suit under the Federal Employers' Liability Act [45 U.S.C.A. § 51] to recover for personal injuries sustained while in the course and scope of his employment with defendant when a train derailed.

Plaintiff alleged, in very general terms, that his injuries were caused in whole or in part by the negligence of the defendant in failing to provide him with a reasonably safe place to work. Three specific allegations of negligence were included in the short quotation found in the margin.[1]

Defendant answered by pleading that the washout of its tracks was caused by an Act of God in that there was an unprecedented rainfall in a small geographical area which caused the water to rise above the level of the tracks. Although defendant offered proof of this defense, as mentioned hereafter, requested instructions and issues on such defense and objected to the charge for the failure to submit such issues, the Court refused to submit any issue which would have enabled the jury to find that the defense was or was not established.

Wade Sheldon, Jr., the conductor of the train, said the derailment occurred as the train passed Mile Post 46, three miles from Plantersville, at about 9 p. m. While it was not raining then, it had been raining earlier. He had no reason to expect a washout on the track where the derailment occurred. After the accident he saw that a "big portion of the foundation of the track was washed away." This was beneath the rails, and the rails were swinging; that is, the ballast and the roadbed had been washed out underneath the rails. While there was a radio in the unit, they received no communication from Somerville or Silsbee (both of which had communication facilities) as to a possible washout.

Plaintiff was in a Somerville motel when he was called to work—about an hour and a half before leaving Somerville—when he heard a storm warning over television for that area. Somerville was having a heavy downpour at that time. The train crew received no warning in advance of the derailment.

J. D. Shepherd was the train's engineer. As he approached the place of the accident, he thought, "it didn't look right"; so, he put the train in emergency stop. No warning was given before then. The roadbed there is four or five feet above ground level. A bridge spans what is usually a dry creek. Previously, he had seen water in the creek, but it had never backed up except this night. It was a good track there. After the wreck the washout appeared to be about fifteen feet wide. The bridge that night did not take care of the volume of water, and the cause was clearly a washout.

Jerry D. Waits of Brenham was the track supervisor. The track at Mile Post 46 (scene of accident) was his responsibility. He had inspected this track on the morning of the accident and noticed nothing unusual. He had received no reports of heavy rain that trip, but previously weather reports were telephoned by the chief dispatcher at Temple. If he finds something wrong at a location, he can "flag" the location or use his radio. He was called that night after the accident had occurred.

Morgan Price, a resident of Plantersville for 55 years, said they had more than six inches of rain on the day of the accident. It fell faster in a shorter period of time than any he had previously witnessed. A. C. Coumes, a rancher, also detailed the

1. "The track and supporting bed and ties were faulty in construction, materials and or maintenance since they allowed this train to detail on the occasion in question. Defendant also violated Article 6328 of Vernon's Civil Statutes Annotated and such violation was negligence and was a cause, in whole or in part, of the accident and injuries to Plaintiff. In addition, Defendant violated the provisions of the Boiler Inspection Act [45 U.S.C.A. § 23] in that the engine Plaintiff was riding in was not safe, all of which was a cause in whole or in part of his injuries."

"blinding rain", and said that water rose four feet in fifteen minutes.

Louis H. McCurry, assistant engineer for the defendant, says in building a bridge defendant uses a one-hundred-year frequency of rainfall runoffs, while the Texas Highway Department uses a fifty-year frequency. The bridge involved was designed to discharge eleven thousand cubic feet of water per second.

In 1945, some water overflowed the top of the track so the track was raised. On the day of this derailment, the rainfall exceeded the capacity of the bridge causing the washout. This rain was substantially more than one likely to occur once in one hundred years. His rainfall frequency calculation was based on maps and prior data.

Joseph L. Goldman, a meteorologist for the Institute for Storm Research in Houston, made a study of the rainstorm involved in this accident. This rain began at 5 p. m. and lasted until 7:30 p. m. For thirty minutes, a rainfall of 3.6 inches is expected to occur once every hundred years. A study of Galveston radar showed this rain equaled that rate. He testified, "I think we can safely say this is truly a very extraordinary rainfall rate."

Special Issue Number One is quoted:

"Do you find from a preponderance of the evidence that on the occasion in question the railroad was negligent?"

To which the jury responded: "We do." In answer to the second issue, the jury found that "such negligence" was a cause "in whole or in part" of the injuries sustained by plaintiff. The jury failed to find any violation of the Boiler Inspection Act, so plaintiff's judgment rests entirely and exclusively upon the finding in issue number one.

■ As we have pointed out earlier, plaintiff pleaded not only the violation of the Boiler Inspection Act but had two other factual allegations: inadequacy of the bridge as a violation of Art. 6328, Tex.Rev.

Civ.Stat.Ann. (1926), and old and rotten ties in the track. Plaintiff offered no evidence as to the condition of the ties and his evidence with reference to the adequacy of the bridge was based, almost exclusively, upon cross-examination of the witnesses brought by the railroad. He spent a large amount of time attempting to prove a penalty violation under the federal act but the jury did not find for him on this facet of the case.

Defendant's point number seven spells out the present complaint and the procedural base therefor:

"The error of the trial court in submitting to the jury Special Issue No. 1 over the objection that such issue was a global issue which permitted the jury to make a finding of negligence based upon facts which were not pled and upon which no evidence had been introduced or upon facts pled but upon which no evidence had been introduced."

Plaintiff, relying almost exclusively upon *Members Mutual Insurance Co. v. Muckelroy*, 523 S.W.2d 77 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.), contends that the trial court did not abuse its discretion in using the "broad form" of submission. After careful consideration of the authorities on the subject, we disagree and sustain defendant's point number seven.

*Muckelroy* relied, to a large extent, upon language found in *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 255 (Tex.1974) with a quotation to be found at 523 S.W.2d at 81. This language is not appropriate to the case under review. While there were several specific acts of negligence alleged, our plaintiff did *not* introduce "evidence as to each"; thus, the language of Justice McGee is not in point.

We have carefully studied the law review article authored by Mr. Justice Pope [27 Sw.L.J. 577 (1973)] and remain convinced that the trial court, in this case and under the facts which we review, abused its discretion in submitting the broad issue.[2]

2. In a proper case, we have no hesitancy in following the suggestions set out by Justices Pope and McGee in the respective publications noted earlier. See, e. g., *Texas Gulf Sulphur Company v. Gladys City Company*, 506 S.W.2d 281, 288–289 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.).

Indeed, the language found in the opinion on rehearing in *Muckelroy* lends support to our conclusion. The Houston Court felt called upon to clarify its earlier opinion and we now hold in accordance with the *Muckelroy* "clarification", that the trial court should have instructed the jury to limit its consideration to those acts of negligence which were pleaded *and* supported by evidence. Defendant's point of error number seven is sustained.

■ We turn now to a consideration of defendant's contention that the manner of submission of its defense of Act of God was erroneous. No one can seriously argue that plaintiff's evidence as to Act of God was not sufficient to warrant submission of the issue under ordinary circumstances. Although requested, the trial court refused to submit an issue whereby the jury could find, or fail to find, that the occurrence was caused by an Act of God. Instead, an instruction was given which preceded the special issues in the charge. We quote the instruction in the margin.[3] Defendant submitted a requested issue accompanied by an instruction which would have elicited a direct finding on the question. It also made specific objections to the court's failure to submit the issue to the jury.

Plaintiff contends that no error is shown, arguing that the Act of God defense is simply an "inferential rebuttal issue" and such issues were condemned in *Yarborough v. Berner,* 467 S.W.2d 188 (Tex.1971), and *Del Bosque v. Heitmann Bering-Cortes Company,* 474 S.W.2d 450 (Tex.1971), as well as amended Tex.R.Civ.P. 277.

■ Both Rules 277 and 279 still require the submission of controlling issues made by the pleadings and the evidence. As counsel for the defendant complains:

"Giving them [the jury] a definition of 'Act of God' without telling them what the effect would be of a determination by them that Scott's injuries were caused by the 'Act of God' was a useless procedure.

\* \* \* \* \* \*

"As stated in the objection, there was no way for this jury to register their determination in regard to 'Act of God'."

Being of the opinion that the trial court erred in the manner of submitting the defense, we sustain defendant's point of error number six.

■ We have grave doubt as to the factual sufficiency of the evidence to support plaintiff's recovery herein when tested under the usual rules as set out in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). However, cases arising under the Federal Employers' Liability Act are determined under a different standard. *Texas and Pacific Railway Company v. Roberts,* 481 S.W.2d 798, 800 (Tex.1972). While federal law governs substantive rights of the parties in F.E.L.A. cases, such cases filed in our state courts are tried "in accordance with our own Rules of Civil Procedure." *Missouri Pacific Railroad Company v. Cross,* 501 S.W.2d 868, 870 (Tex.1973).

We find no merit to the remaining points of error brought forward. Because of the errors discussed herein, the judgment of the trial court is reversed and the cause is remanded.

REVERSED AND REMANDED.

STEPHENSON, Justice, concurring.

I concur with the opinion written by Justice Keith and add an additional reason for sustaining defendant's point of error number seven.

3. "You are instructed that by the term 'Act of God' as used in this Charge is meant an accident that is due directly and exclusively to natural causes without human intervention and which no amount of foresight or care reasonably exercised could have prevented. The accident must be one occasioned by the violence of nature, and all human agency is to be excluded from creating or entering into the cause. The term implys the intervention of some cause not of human origin and not controlled by human power. If the derailment resulted in whole or in part from human negligence it was not an 'Act of God'.

"An occurrence may be an 'Act of God', that is, an event not caused in whole or in part by the negligence of any party."

The Constitution of the State of Texas, as originally written, and not amended, provides in part in Art. V, § 13 as follows: ". . . In trials of civil cases . . in the District Courts, nine members of the jury, concurring, may render a verdict . . . ."

I attach real significance to the word "concurrence" as used in this constitutional provision and give it its usual meaning, that is, to unite, combine and agree.

The plaintiff in the case before us, as stated in the majority opinion, alleged among other things that defendant was negligent in the construction, materials and maintenance of the bed and ties under the track in question. This jury was asked only whether the defendant was negligent on the occasion in question. It is obvious that it is impossible to ascertain whether there was any "concurrence" upon the part of the jury upon a particular act of negligence.

The Supreme Court of this state, in *Trinity & B. V. Ry. Co. v. Geary*, 107 Tex. 11, 172 S.W. 545 (1915), made it crystal clear that "concurrence" meant the same thing to it as I have indicated above. In this case it is stated that the trial court submitted two grounds of negligence to the jury, and the court's charge permitted the jury to allow the plaintiff to recover upon either ground separately or upon the combined grounds together. The form of the jury answer showed the recovery was upon the combined grounds. The case was reversed and remanded with this statement:

"Interpreted by the charge, the verdict clearly expresses that a part of the jury found for plaintiff under the first ground, and part under the third ground. It is manifest that some of the jury based their finding on the first, and some on the third ground, but all did not agree upon either. There being no 'concurrence' of all of the members of the jury on either ground of negligence, the action of the district court in receiving the verdict was in direct disregard of the statute."

I have found no case in this state which indicates to me that the law of *Geary,* su-pra, is no longer the law in this state. To paraphrase Justice Norvell in *Reed v. Buck,* 370 S.W.2d 867 (Tex.1963), that ancient cases, like old soldiers, do not just fade away, but remain decisions of the Supreme Court and unless there is some good reason for overruling them, they should not be disregarded.

In my humble opinion, the constitution of this state requires "concurrence" by the jury, which is not reflected in this record before us.

DIES, Chief Justice, dissenting.

With respect, I dissent. I believe Tex.R. Civ.P. 277 now gives the trial court discretion to submit the issues as done in this case. Certainly, *Members Mutual Insurance Co. v. Muckelroy,* 523 S.W.2d 77 (Tex. Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.), expressly so holds. Moreover, the law review article by Mr. Justice Pope and Mr. Lowerre [27 Sw.L.J. 577 at 581 (1973)] explains the scope of the Rule 277 as follows:

"Let us suppose a case in which the judge submits the issue, 'On the occasion in question, was the defendant negligent?' followed by the question conditioned upon the first answer, 'On the occasion in question, was such negligence a proximate cause of the occurrence in question?' Such a broad submission boggles the mind of Texas practitioners who have lived under *Fox v. Dallas Hotel Co.* [111 Tex. 461, 240 S.W. 517] for half a century. On the other hand, most jurisdictions would not regard such a submission as strange at all, *and it would seem that the revised rule would permit that form of submission.*" (Emphasis supplied)

The authors continued, *supra* at 590: "The rule permits the trial court to submit the negligence and contributory negligence issues as the controlling issues, or to submit these issues more specifically."

I agree with the majority opinion that the standard of proof is different in an F.E.L.A. case. See *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed.2d 916

(1945); *Steele v. Louisville & Nashville R. Co.,* 506 F.2d 315 (6th Cir. 1974). Indeed, in *Rogers v. Missouri Pac. Ry. Co.,* 352 U.S. 500, 507, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), we find:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on the grounds of probability, attribute the result to other causes, including the employee's contributory negligence."

I believe this is another reason why the form of submission used in this case is not improper.

As was said by our Supreme Court in *Texas and Pacific Railway Company v. Roberts,* 481 S.W.2d 798, 800 (Tex.1972):

"The purpose of the F.E.L.A. is to vest the jury with complete discretion on the factual issue of liability.

\* \* \* \* \* \*

"Stated another way, once the appellate court determines that the verdict is supported by some evidence about which reasonable minds could differ, the appellate court's function is exhausted."