910 F.2d 1284
 31 Fed. R. Evid. Serv. 198
 Jack R. EDMONDS, (Carol Edmonds, Curtis Lynn Edmonds, Carla
Dianne Edmonds Madison, Jack Ramson Edmonds, Jr., Jackie
Edmonds, and Kristin Edmonds Substituted in the Place and
Stead of Jack R. Edmonds, Deceased), Plaintiffs-Appellees,
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellant.
 No. 89-3427.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 10, 1990.
Rehearing Denied Oct. 29, 1990.
 
 David S. Kelly, Bryan C. Misshore, Lemle, Kelleher, Kohlmeyer, Dennery, New Orleans, La., for defendant-appellant.
 Jack W. Harang, Stuart H. Smith, Metairie, La., for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, SMITH, and BARKSDALE, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The central issue in the appeal of this personal injury suit is whether a psychologist could testify on the causative link between stress and coronary artery disease. We hold that in this instance he could not, and we reverse and remand this case for a new trial on damages.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The plaintiff/appellee, Jack R. Edmonds, worked as a trainman for the Illinois Central Gulf Railroad, the defendant/appellant. On May 5, 1986, he was injured while riding on the side of the bulkhead flatcar. As the car traveled at five miles per hour in Illinois Central's McComb, Mississippi yard, an improperly secured iron fuel spout struck Edmonds on the back of his head. Edmonds's supervisor immediately took him to a hospital for medical evaluation. Doctors treated a small laceration on the plaintiff's scalp, but they found no indication of more serious injuries.
 
 
 3
 In the following months, Edmonds was examined for neurological and cervical abnormalities. Nothing out of the ordinary was found. Edmonds returned to work in October 1986. Between January and March 1987, however, Edmonds complained of increasing pain in his neck, shoulder, and arm. In April, a neurosurgeon diagnosed him positive for disc herniation at C4-5 and C5-6. Surgery was considered inappropriate; the doctor prescribed physical therapy.
 
 
 4
 Edmonds sued Illinois Central in May 1987 under the Federal Employers' Liability Act.[1] He asserted that the May 5 accident occurred solely as a result of Illinois Central's negligence. He alleged that as a result he suffered severe personal injuries.
 
 
 5
 In June 1987, Edmonds suffered a myocardial infarction. (Edmonds had suffered a previous myocardial infarction in 1977). He was hospitalized for two weeks as doctors treated him for obstructive cardiovascular disease. A cardiac catherization revealed that Edmonds suffered from multi-vessel coronary disease. In July, Doctor Gerhard Mundinger performed triple bypass surgery on Edmonds.
 
 
 6
 Edmonds was hospitalized again on September 7, 1988; his cardiologist diagnosed him as having congestive heart failure. He died in April 1989, seven months after the end of the trial.
 
 
 7
 At trial, Edmonds sought to prove that as a result of the blow to his head, he sustained minimal permanent brain damage (resulting in forgetfulness and intermittent dizziness), two inoperable ruptured cervical discs, and chronic post traumatic stress disorder. Moreover, Edmonds sought to establish a link between this accident-induced stress and his worsening coronary artery disease. After a four-day trial, the jury rendered a verdict in favor of Edmonds in the amount of $825,000.[2] Illinois Central moved for a new trial, principally on the ground that the court admitted incompetent evidence on the subject of the cause of Edmonds's heart condition. Without that evidence, Illinois Central argued, there was no (or insufficient) proof that stress worsened the plaintiff's pre-existing heart disease. The district court denied the motion. Illinois Central appeals from the judgment and the denial of its post-trial motion,[3] but its challenge is limited to the question of damages, not liability.
 
 DISCUSSION
 
 8
 Dr. Drew Gouvier, a clinical psychologist, testified at trial as a witness for the plaintiff. Gouvier had examined Edmonds prior to trial. He performed memory and intelligence tests on the plaintiff, but he performed no medical tests and made no medical diagnoses. At trial, Gouvier expressed the opinion that Edmonds had sustained permanent brain damage and that he suffered from chronic post-traumatic stress disorder. On direct examination, counsel for Edmonds asked Gouvier whether "stress [can] trigger other problems with the human body". Illinois Central objected to the question, arguing that it called for medical, not psychological, expertise. The court overruled the objection. Gouvier responded that the relationship between stress and physical illness--including cardiovascular illness--is undeniable. On redirect examination, plaintiff's counsel raised the issue again, and Gouvier squarely addressed the issue of causation: "[I]t is impossible for me to imagine that the things that [Edmonds has] been through have not had ... some real significant effect in worsening his [heart] condition, perhaps even shortening his life."[4]
 
 
 9
 A trial court has wide discretion to admit or exclude expert testimony. We review challenges to rulings on expert testimony under the "manifestly erroneous" standard.[5] Even when an error is shown, a party is not entitled to relief unless the error substantially prejudices its rights.[6]
 
 
 10
 Rule 702 of the Federal Rules of Evidence provides for the admission of expert testimony:
 
 
 11
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 12
 Our review of the district court's ruling raises two questions: 1) whether Gouvier was qualified and 2) whether he had an adequate basis to give his opinion on the causative link between Edmonds's stress and the worsening of his pre-existing heart condition. We answer both in the negative.
 
 
 13
 The district court qualified Gouvier as an expert in the field of clinical psychology. According to Gouvier, a clinical psychologist is one with specialized training in the application of psychological principles to the assessment and treatment of people with psychological problems. Gouvier is not a medical doctor, and he is not involved in making medical diagnoses or ordering medical studies or tests. The question whether stress worsened the plaintiff's coronary artery disease is a medical issue that is plainly beyond this witness's expertise in the field of psychology.
 
 
 14
 Moreover, we find that there is an inadequate foundation for Gouvier's opinion on causation. As we stated in Viterbo v. Dow Chemical Co.,[7] "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury". On this medical issue, Gouvier does not rely on medical tests for his opinion. Rather, he refers to studies suggesting a link between stress and illness, but he is unable to support their application to this case. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[8] Here, we have determined that Gouvier's credentials do not qualify him as an expert on this issue. Clearly, then, his subjective opinion on this medical issue is not admissible.
 
 
 15
 Having concluded that the district court erred in permitting Gouvier to testify on the link, between stress and heart disease, we next consider whether Illinois Central was substantially prejudiced by the evidence. We are mindful that the standard by which evidence of causation is measured in suits under the Federal Employers' Liability Act is less stringent than in other cases. The test is "whether the proofs justify with reason the conclusion that the employer's negligence played any part, even the slightest, in producing the injury or death for which damages are sought".[9] Still, the plaintiff must show more than a possibility that a causal relation existed.[10]
 
 
 16
 Without considering the improperly admitted evidence,[11] the plaintiff is unable to prove causation. Dr. Mundinger, the plaintiff's heart surgeon, testified that although it is somewhat speculative, it is generally true that "stressful situations exacerbate and possibly accelerate the development of coronary artery disease". He later retreated somewhat from this position, stating that stress would not actually contribute to anatomical blockage, but it could contribute to the increasing manifestation of the coronary artery disease. Significantly, the surgeon never suggested that stress played any role in worsening Edmonds's condition. The same is true for the other cardiologists who testified at trial: they agreed that stress could affect an individual's heart condition, but none of them opined that stress affected Edmonds's heart condition.
 
 
 17
 Edmonds correctly identifies two cases that uphold findings that stress contributed to heart disease. An examination of these cases, however, serves to highlight the weakness of the plaintiff's evidence in this case. Cardwell v. Chesapeake & Ohio Railway Co.,[12] is one such case. There was evidence at trial that, after a work-related accident, the plaintiff suffered from anxiety and depression. The plaintiff's expert medical witness testified that those factors "played a dominant role in the aggravation of pre-existing coronary arteriosclerosis and played a dominant role in the precipitation of myocardial infarction ...".[13] Edmonds can point to no such testimony in this case (except that of the psychologist, Gouvier). Steele v. Louisville & Nashville Railroad Co.,[14] is to the same effect. The plaintiff suffered a partially disabling accident. Thereafter, because of his limited social and economic abilities, he experienced frustration and stress. Several years after the initial trauma, the plaintiff suffered an acute myocardial infarction. At trial, the plaintiff's medical expert gave his opinion on the connection between the two events: "[T]here is a very strong probability that the injury ..., the pain ..., and the duress of unemployment played a strong role in accelerating the cause of any preexisting coronary heart disease ...".[15] Again, Edmonds can point to no comparable testimony.
 
 CONCLUSION
 
 18
 We find that the district court committed manifest error in permitting a psychologist to testify on the medical effects of stress. This ruling substantially prejudiced the defendant's rights; the properly admitted evidence on this subject is extremely weak and, by itself, is insufficient to prove a causative link between the plaintiff's stress and the deterioration of his heart condition. Accordingly, we remand for a new trial on damages. The plaintiff should have the opportunity to prove that stress from the accident played a role in his heart condition, because he was justified in relying on the admission of Gouvier's testimony.
 
 
 19
 AFFIRMED in part, REVERSED and REMANDED in part.
 
 
 
 [1]
 45 U.S.C. Sec. 51 et seq
 
 
 [2]
 The jury found Edmonds five percent at fault, but it concluded that Edmonds's negligence did not contribute to his injuries
 
 
 [3]
 Illinois Central states that the principal issue in this case is: "[w]hether the district court erred in denying Illinois Central's Motion for New Trial and Alternatively for Remittitur and is awarding judgment in favor of Jack R. Edmonds?" Illinois Central urges that the district court abused its discretion in denying its motion because the great weight of the properly received evidence was against the verdict. At the heart of its argument is the proposition that the court erred in admitting certain expert testimony on the issue of causation
 We believe that the more appropriate tack is to address the evidentiary ruling head on. The challenge to the denial of the motion for new trial seems to be a circuitous route to address the propriety of the court's ruling to admit the contested testimony.
 
 
 [4]
 Edmonds contends that Illinois Central failed to perserve this point of error for review. On cross-examination, counsel for Illinois Central questioned Gouvier on his diagnosis of chronic post-traumatic stress disorder. Gouvier testified that the first element one looks for in diagnosing that disorder is a "stressor" that would evoke significant symptoms of distress. Counsel for Illinois Central asked Gouvier whether a triple bypass operation was a stressor that would cause post-traumatic stress disorder. Gouvier responded that he was certain that was the case. He then digressed to his theory that stress from the accident "may have in fact helped to precipitate his heart problems". Illinois Central's failure to object to this nonresponsive answer, after already having objected to the witness's testifying on this subject, does not prevent it from raising the issue on appeal
 
 
 [5]
 Page v. Barko Hydraulics, 673 F.2d 134, 139 (5th Cir.1982)
 
 
 [6]
 Hardy v. Chemetron Corp., 870 F.2d 1007, 1009 (5th Cir.1989)
 
 
 [7]
 826 F.2d 420, 422 (5th Cir.1987)
 
 
 [8]
 Id. at 424
 
 
 [9]
 Rogers v. Missouri Pacific Ry., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)
 
 
 [10]
 Moody v. Maine Cent. R.R., 823 F.2d 693, 695 (1st Cir.1987)
 
 
 [11]
 It is clear that Gouvier's testimony was the most compelling on the existence of a causative link. The district court quoted his testimony at length in its denial of Illinois Central's motion for new trial
 
 
 [12]
 504 F.2d 444 (6th Cir.1974)
 
 
 [13]
 Id. at 447
 
 
 [14]
 506 F.2d 315 (6th Cir.1974)
 
 
 [15]
 Id. at 318