Connie SZYMANSKI, Administratrix of the Estate of Stanley Szymanski, Plaintiff–Appellant,

v.

COLUMBIA TRANSPORTATION COMPANY, A DIVISION OF OGLEBAY–NORTON CO., Defendant–Appellee.

No. 95–3205.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1997.

Decided Aug. 31, 1998.

Leonard C. Jaques, Judith A. Schornack–Smith (briefed), Michael J. Connor (argued), Jaques Admiralty Law Firm, Detroit, MI, for Plaintiff–Appellant.

Harold W. Henderson (argued and briefed), Thompson, Hine & Flory, Clevelantd, OH, for Defendant–Appellee.

Before: MARTIN, Chief Judge; and MERRITT, KENNEDY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, and COLE, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which MERRITT, KENNEDY, NELSON, RYAN, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and COLE, JJ., joined. MOORE, J. (pp. 597–601), delivered a separate dissenting opinion, in which MARTIN, C. J., and DAUGHTREY, J., joined.

## OPINION

BOGGS, Circuit Judge.

This case fundamentally concerns the application of the Supreme Court's consolidated decisions in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), to a claim of a seaman's physical injury (a heart attack) allegedly arising from job-related stress. We hold that Supreme Court precedent applies to bar this claim, under either the Jones Act or the doctrine of "unseaworthiness," and we affirm the decision of the district court granting summary judgment to the defendant.

## I

Stanley Szymanski was a conveyorman employed from 1974 to 1990 by the Oglebay–Norton Company on its selfunloading cargo vessels on the Great Lakes. Such vessels are unloaded by opening hydraulic gates at the bottom of holds to permit bulk cargo such as stone, coal, or taconite pellets to drop onto a large conveyor belt. Amid billows of dust, the cargo is borne on the belt to an unloading boom, and removed to the dock.

The "self-unloading" system is not entirely automatic. It requires a two-person conveyor gang, consisting of a conveyorman and a gateman. Conveyormen supervise gatemen in unloading cargo. They also inspect, monitor, and repair the machinery during unloading. The work of conveyormen is strenuous, fast-paced, and sometimes of long duration. Improperly unloaded cargo can break down the equipment or lead to spillage (which must be remedied with arduous shovelwork). Critical to smooth operation is the role of the gatemen, who control the unloading gates by means of a control panel and thereby regulate the flow of materials being off-loaded by the conveyor belts. Gatemen are supposed to assist conveyormen in their tasks; conveyormen, in addition to their other tasks, periodically relieve the gatemen during meals and breaks.

On March 26, 1990, Szymanski was assigned to be the conveyorman in charge of Oglebay's flagship, the M/V Courtney Burton. The ship's gateman was considered by his crewmates to be incompetent, especially at the crucial task of controlling the rate of discharge of cargo; as a result of their contempt for him, they gave him the moniker of "The Bum." Although the equipment on the Courtney Burton was in good condition, Szymanski was unhappy that he was assigned to that ship and believed that the gateman with whom he was assigned to work was incompetent at operating the unloading gates.

Conveyormen who had worked with The Bum in the past had suffered heart attacks, and Oglebay allegedly knew of his shortcomings. Szymanski suffered chest pains during the time he was yoked to The Bum. Although he attributed those pains, at the time, to excessive cigarette smoking, he nonetheless complained to Oglebay of The Bum's poor performance, and requested a transfer. Szymanski's last day on the Courtney Burton was July 21, 1990. He took a short vacation,

and on July 31 took up conveyorman duties on his favorite ship, the S.S. Armco (which he referred to as "my old home").

Nothing aboard that vessel was amiss except for some squealing conveyor rollers, which Szymanski and his co-workers had to grease. Szymanski worked until 10:00 p.m. on August 16, when he went ashore in Toledo, his home port, to enjoy further vacation time. His wife picked him up at the dock and drove him home. A few hours later, he suffered a heart attack. He underwent coronary bypass surgery in February 1991, and he was expected to recover sufficiently to return to work. However, Szymanski, at age 60, suffered additional health problems, including diabetes. At one time, he had been an active alcoholic, and he smoked two packs of cigarettes a day at the time of his heart attack. In June 1991, he underwent surgery for ulcers and a bowel obstruction, after which his physicians informed him that his days as a conveyorman were over. In 1993, Szymanski filed this action for negligence under the Jones Act, 46 U.S.C. app. § 688, and for unseaworthiness under general maritime law.

On October 20, 1994, Szymanski suffered his second heart attack, this one fatal. His widow and administratrix, Connie Szymanski, continued this action.

The district court granted summary judgment for Oglebay. A divided panel of this court reversed. *See Szymanski v. Columbia Transp. Co.*, 107 F.3d 371 (6th Cir.1997). We granted Oglebay's suggestion for rehearing en banc, 107 F.3d 371 (6th Cir.1997), and now affirm the decision of the district court.

## II

We review the district court's decision granting summary judgment de novo, using the same standards applied by the district court. *See Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir.1992). Summary judgment is proper if the evidence submitted shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See City Management Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir.1994).

We consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Ibid.*

At issue in this case is the proper application of the Supreme Court's decision in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (consolidated with *Consolidated Rail Corp. v. Carlisle* ). As the district court in this case stated:

In *Gottshall*, the Court considered two claims for negligent infliction of emotional distress: that of Carlisle, a plaintiff who had worked for the railroad as a train dispatcher for several years and who suffered a nervous breakdown and other injuries due to overwork; and that of Gottshall, a plaintiff who suffered major depression and post-traumatic stress disorder after witnessing a co-worker have a heart attack and die while working.

The *Gottshall* Court adopted the common law "zone of danger" test to determine who may recover for negligent infliction of emotional distress under the FELA. [512 U.S. at 554–57, 114 S.Ct. 2396.] The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain physical impact as a result of a defendant's negligent conduct or who are placed in immediate risk of physical harm by that conduct. *Id.* Based on that standard, the Court remanded the *Gottshall* portion of the case for reconsideration under the zone of danger test, and remanded the *Carlisle* portion of the case with instructions to the lower court to enter judgment in favor of the defendant.

... [T]he *Carlisle* portion of the *Gottshall* case ... controls this case....

. . . .

Carlisle testified at trial that, as a result of being overworked and burdened with both excessive responsibility and an abusive, alcoholic supervisor in the South Philadelphia yards, he experienced insomnia, fatigue, headaches, depression, sleepwalking and substantial weight-loss. Carlisle testified further that, as a result of being made to work 12 to 15 hour shifts for 15 consecutive days in August, 1988, his stress-related problems finally culmi-

nated in a nervous breakdown. Carlisle introduced evidence showing that his emotional and physical injuries were a foreseeable result of his working conditions. Over defendant's objection, the court admitted into evidence a series of depositions, taken in a separate case, in which Carlisle's co-workers and subordinates testified that their jobs as dispatchers and supervisors in the Philadelphia Consolidated Rail offices had caused them to suffer cardiac arrests, nervous breakdowns, and a variety of emotional problems such as depression, paranoia and insomnia. [*Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90, 92 (3d Cir.1993).] Carlisle testified that the train dispatchers he supervised often complained about Consolidated Rail's outdated equipment and about the long hours and high level of stress in their jobs; Carlisle, in turn, passed on their complaints to his supervisors and added his own concerns about the excessive hours and stress of his job. He received no response to these complaints. *Id.*

*Szymanski v. Columbia Transportation Co.*, No. 93 CV 7423, 1995 WL 329407, at *3–5 (N.D. Ohio Jan 30, 1995) (footnotes omitted).

Despite these sympathetic facts, the Supreme Court reversed in each case, and granted summary judgment to the defendant in *Carlisle*. It held that claims essentially based on infliction of emotional distress must meet the common-law "zone of danger" rule, requiring that a plaintiff making such a claim suffer a physical impact, or be in the zone of danger of suffering such an impact. *See Gottshall*, 512 U.S. at 555–56, 114 S.Ct. 2396. In particular, the Court held that "Carlisle's work-stress-related claim plainly does not fall within the common law's conception of the zone of danger.... [W]e will not take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment. In short, the core of Carlisle's complaint was that he had been given too much—not too dangerous—work to do. That is not our idea of an FELA claim." *Id.*

at 558, 114 S.Ct. 2396 (internal quotations omitted).

■ Plaintiff's fundamental problem is getting around the Supreme Court's *Gottshall–Carlisle* holding, recently reinforced in *Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). In *Metro–North*, the Supreme Court emphasized its adherence to the *Gottshall* holding in reiterating the reasons "common law courts have restricted recovery for emotional harm to cases falling within rather narrowly defined categories...." *Id.* 521 U.S. at ——–——, 117 S.Ct. at 2118–19.

Those cases control. Plaintiff's efforts at distinction are unpersuasive.

Plaintiff claims, first, that this suit is for physical injury, not for emotional injury. This confuses the "physical impact" that is a prerequisite for liability (meaning either actual impact by a physical object[1] or being in the zone of danger for such an impact) with any physical manifestations of an emotional injury that may have occurred. In *Carlisle* itself, the plaintiff complained of physical sequelae of the alleged stress—headache, insomnia, depression, and weight loss. *See* 512 U.S. at 539, 114 S.Ct. 2396. And in *Buckley*, even "physical impact" by a carcinogenic substance was not deemed adequate to satisfy the requirement, which we take as another sign that *Gottshall* encompasses traditional common law concepts of physical impact.[2]

Second, Szymanski claims that his injury was actually caused by "dangerous work, not too much work." However, *Carlisle* forecloses this claim as well. In *Carlisle*, conditions much harsher than Szymanski's—12 to 15 hour days, repeated "for weeks at a time," "under a high level of stress ... and poor working conditions," 512 U.S. at 539, 114 S.Ct. 2396—were not sufficient to fall outside the "too much work" rubric. Surely Szymanski's working with an unpleasant or incompetent workmate, for up to 4 months, necessitating some augmenting of his own job, does not qualify either.

1. "Physical object" includes, of course, such things as radiation, gases given off as a result of an explosion, and the like.

2. To the extent that our decision in *Steele v. Louisville & Nashville R.R.*, 506 F.2d 315 (6th Cir.1974) could be read as holding to the contrary, it is overruled.

Third, he contends, as did the majority of the panel, that the limitation to injuries caused by physical stress should be extended to those caused by "extraordinary non-physical stress." But there is no authority for such a distinction, which inevitably would lead to a large increase in potential employer liability. In *Carlisle* itself, there was extraordinary non-physical stress, leading to physical manifestations, yet the Supreme Court did not permit liability. In particular, the concluding reference in *Carlisle* denying compensation "for stress arising in the ordinary course of employment" certainly does not constitute a limitation to "ordinary stress." By its terms, it refers to the "ordinary course of employment," which both Carlisle and Szymanski were engaged in. Certainly any type of work-related stress that brings on the type of physical results that occurred to either Mr. Carlisle or Mr. Szymanski are extra-ordinary in common parlance. However, all of the reasons given for limiting liability to actions falling within the common-law "zone of danger" test would apply to bar cases of "extra-ordinary non-physical" stress as well. See *Gottshall*, 512 U.S. at 554–57, 114 S.Ct. 2396.

## III

We turn now to Szymanski's unseaworthiness claim. The district court disposed of that claim as follows:

[B]ecause summary judgment is appropriate on Plaintiff's Jones Act case, it is also appropriate on Plaintiff's unseaworthiness claim. A seaman alleging injury has only one claim, which is split conceptually into separate parts (negligence and unseaworthiness) because of historical development in seamen's remedies. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 18–21, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Thus, as summary judgment is proper on Plaintiff's Jones Act claim, it is also proper on Plaintiff's unseaworthiness claim.

1995 WL 329407, at *5.

The panel rejected that holding, stating:

While the remedies available pursuant to a seaman's unseaworthiness cause of action are generally no broader than those available under the Jones Act, the causes of action themselves have different elements and must be analyzed separately. *See Miles*, 498 U.S. at 32–33, 111 S.Ct. at 326....

This court recently explained that Jones Act causes of action and unseaworthiness causes of action are separate claims comprised of different elements. *Cook v. American Steamship Co.*, 53 F.3d 733, 740–41 (6th Cir.1995). We explained that the Jones Act cause of action was based on the shipowner's negligence, while the unseaworthiness cause of action has no negligence element. Rather, the shipowner's absolute and nondelegable duty is to "furnish a vessel and appurtenances reasonably fit for their intended use." *Id.* at 741 (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960))....

An incompetent crew member could make a vessel unseaworthy. *See Waldron v. Moore–McCormack Lines, Inc.*, 386 U.S. 724, 727 n. 4, 87 S.Ct. 1410, 1412 n. 4, 18 L.E.2d 482 (1967) (unseaworthiness may result when a member of the crew is not competent to meet the tasks arising on a voyage). Thus, we reverse the district court's order granting summary judgment to Oglebay.

*Szymanski*, 1997 WL 65748, at *7–8.

The panel correctly recognized that claims brought under the Jones Act and claims of unseaworthiness brought under general maritime law are distinct causes of action, the elements of which differ somewhat. The panel also correctly identified the salient differences: the applicable standard of liability, and the applicable standard of causation.

However, it is also necessary to consider the nature of the *injuries* for which a plaintiff may seek a remedy under the two causes of action. We conclude that, despite their other differences, the two causes of action are uniform in the injuries they reach. Where an injury is not remediable under the Jones Act, as we hold is true here, neither can the doctrine of unseaworthiness offer redress.

We are guided to this conclusion by the reasoning of the Supreme Court in *Miles*, whose thrust we interpret quite differently than the panel did. In *Miles*, the Court extensively discussed *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), a case that overruled *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), and held that a cause of action for wrongful death exists under general maritime law. The *Moragne* Court noted that, in the decades following *The Harrisburg*, the federal government and all fifty states enacted wrongful-death statutes covering maritime employees. Because "[a]dmiralty is not created in a vacuum [and] legislation has always served as an important source of both common law and admiralty principles," *Miles*, 498 U.S. at 24, 111 S.Ct. 317, "[t]he unanimous legislative judgment behind the Jones Act, [the Death on the High Seas Act], and [the wrongful death statutes in all fifty states] created a strong presumption in favor of a general maritime wrongful death action." *Ibid.* Consequently, *Moragne* recognized that an action alleging unseaworthiness could be brought to remedy a wrongful death, thereby "creat[ing] a general maritime wrongful death cause of action." *Id.* at 27, 111 S.Ct. 317.

*Miles*, for its part, similarly aligned the range of injuries covered by statute and general maritime law. The question was whether a general maritime action could afford recovery to a seaman's survivor for loss of society. The Court noted that the Death on the High Seas Act, by its terms, and the Jones Act, by its history, limit recoverable damages in wrongful death suits to pecuniary losses, not non-pecuniary losses such as loss of society. The Court therefore held, in a passage cited by the panel in this case, that

> [i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Id.* at 32–33, 111 S.Ct. 317 (quoted in *Szymanski*, 1997 WL 65748, at *7).

In *Carlisle*, the Court refused to recognize "a claim under the FELA [and thus the Jones Act] for negligent infliction of emotional distress arising from work-related stress." 512 U.S. at 554, 114 S.Ct. 2396. To do otherwise "would tend to make railroads the insurers of the emotional well-being and mental health of their employees," a result running counter to the Court's clear holdings that "FELA is not an insurance statute." *Ibid.* Following *Carlisle*, we have held today that recognizing Szymanski's Jones Act claim for the physical manifestations of his work-related stress would have a similarly unacceptable tendency. *Supra*, at 594–95. Consistent with the approach of the Court in *Miles* and *Moragne*, we believe that the unseaworthiness action should not reach an injury that the statute does not.

A seaman's claim under either the Jones Act or the unseaworthiness doctrine is fundamentally a single cause of action, and remedies under one must be congruent with remedies under the other. If no damages are permitted under the Jones Act, then an unseaworthiness claim cannot supply them either. Indeed, we said as much in *Miller v. American President Lines, Ltd.*, 989 F.2d 1450 (6th Cir.1993), where we stated that "punitive damages are not available in a general maritime law unseaworthiness action for wrongful death" because they are not available under "federal maritime wrongful death statutes"—*i.e.*, the Jones Act or the Death on the High Seas Act. *See id.* at 1459.

■ While an incompetent workman could, as a general matter, cause a ship to be unseaworthy, "unseaworthiness" that leads only to the type of "emotional distress" claim that we have rejected above is not unseaworthiness that entitles a seaman to compensation. The incompetent employee still must either cause some kind of direct physical injury, or place the plaintiff within the zone of danger of such an injury.

Although standards for affixing liability may differ (the Jones Act requires negligence, but has a relaxed standard of causation, while unseaworthiness claims rest on

strict liability but require traditional proximate cause), the liability must be due to a compensable injury. Under either standard, there was no compensable injury as a result of the consequences of Szymanski's emotional distress.

## IV

The judgment of the district court is therefore AFFIRMED.

## DISSENT

MOORE, Circuit Judge, dissenting.

The majority transforms Szymanski's standard negligence claim under the Jones Act and his unseaworthiness claim into something they are not—negligent infliction of emotional distress claims. Once the majority's magic has been performed, the majority quickly moves to dismiss Szymanski's claim based on the holding of *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Because I believe that the majority has applied the wrong governing standard to Szymanski's claim, I respectfully dissent.

## I. JONES ACT IN GENERAL

Szymanski brought his claim pursuant to the Jones Act, 46 App. U.S.C. § 688(a), which provides that:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

This section clearly makes statutes establishing rights and remedies for injured railway employees applicable to Jones Act claims.

The major statute that provides rights and remedies for injured railway employees is the Federal Employers' Liability Act (the "FELA"). The FELA, in 45 U.S.C. § 51, provides that:

Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in [interstate] commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"The rules that govern the liability of railroads under the FELA serve also to govern the liability of shipowners under the Jones Act." *Yehia v. Rouge Steel Corp.,* 898 F.2d 1178, 1184 (6th Cir.1990); *see also American Dredging Co. v. Miller,* 510 U.S. 443, 456, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

To recover damages pursuant to these acts, a plaintiff must show that he was injured while in the scope of his employment; that his employment was in furtherance of his employer's interstate business; that his employer was negligent; and that the employer's negligence played some part in causing the injury for which he seeks compensation. *Green v. River Terminal Ry.,* 763 F.2d 805, 808 (6th Cir.1985) (FELA). Liability may be imposed only if the harm was reasonably foreseeable by the employer. *Id.* However, these acts are to be "liberally construed in favor of the injured plaintiff," and the courts' power to direct verdicts is limited. *Id.* at 806. Under the FELA and therefore the Jones Act, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

FELA and Jones Act employers have a duty to use reasonable care to furnish their employees with a safe place to work. *Yehia v. Rouge Steel Corp.*, 898 F.2d at 1184 (Jones Act); *Ragsdell v. Southern Pac. Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir.1982) (FELA). Employers also may be negligent if they assign employees tasks that are beyond their physical capacities. *Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 908–09 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). Injuries may be compensable under the FELA and Jones Act even if they are caused by the cumulative effect of a series of incidents. *Id.* at 909.

## II. THE IMPACT OF THE *GOTTSHALL* DECISION

In *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 550, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), the Supreme Court held that negligent infliction of emotional distress claims were cognizable under the FELA, but that recovery is allowed only by plaintiffs who can meet the common-law "zone of danger" test. *Id.* at 554–57, 114 S.Ct. 2396. According to the Court, "the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48, 114 S.Ct. 2396.

*Gottshall* addressed "whether recovery for negligent infliction of emotional distress is available under FELA." *Id.* at 541, 114 S.Ct. 2396. "The injury [the Court] contemplate[d] when considering negligent infliction of emotional distress is mental or emotional injury, apart from the tort law concepts of pain and suffering." *Id.* at 544, 114 S.Ct. 2396. As the Court noted, "[t]he injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Id.*

The *Gottshall* opinion also resolved *Consolidated Rail Corp. v. Carlisle*, which had been consolidated with the *Gottshall* case for the Court's review. In *Carlisle*, the plaintiff was a train dispatcher for Conrail and was responsible for ensuring safe and timely movement of passenger and cargo trains. Carlisle sued Conrail for negligent infliction of emotional distress based on the long, stressful, and erratic hours he worked which Carlisle claimed eventually resulted in his suffering a nervous breakdown. *Id.* at 539, 114 S.Ct. 2396. The Court rejected Carlisle's claim, which it characterized as a claim for negligent infliction of emotional distress arising from work-related stress, and stated that allowing Carlisle's claim "would impose a duty to avoid creating a stressful work environment, and thereby dramatically expand employers' FELA liability to cover the stresses and strains of everyday employment." *Id.* at 554, 114 S.Ct. 2396. The Court remanded the case to the Third Circuit with instructions to enter judgment for Conrail, because allowing Carlisle's claim would "take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment," and because the FELA does not permit claims for too much work, as opposed to too dangerous work. *Id.* at 558, 114 S.Ct. 2396.

Unlike the majority, I would hold that the *Carlisle* portion of the *Gottshall* decision does not control the disposition of this case because Syzmanski does not seek recovery for negligent infliction of emotional distress. The language and reasoning employed in the *Carlisle* portion of the *Gottshall* decision limit its holding to cases where the plaintiffs claim negligent infliction of emotional distress. Wholly apart from the "potential for fraudulent and trivial claims," the Court stated that "[a] more significant problem is the prospect that allowing such suits can lead to unpredictable and nearly infinite liability for defendants." *Id.* at 552, 114 S.Ct. 2396. Moreover, the Court was concerned that allowing a claim for negligent infliction of emotional distress caused by work-related stress would "dramatically expand employers' FELA liability to cover the stresses and strains of everyday employment" and "would tend to make railroads the insurers of the emotional well-being and mental health of their employees." *Id.* at 554, 114 S.Ct. 2396. In choosing the zone of danger test to limit

claims of negligent infliction of emotional distress to those employees within the zone of danger of physical impact, the Court emphasized the "FELA's central focus on physical perils." *Id.* at 555, 114 S.Ct. 2396. The "zone of danger" test itself, of course, was devised as a limit on claims for negligently inflicted emotional distress. *Id.* at 546–47, 114 S.Ct. 2396.

In summary, in contrast to Gottshall and Carlisle, Szymanski's claimed injury is a physical one—chest pain and physical exhaustion due in part to the inability to take time to eat or make his conveyorman rounds, which eventually resulted in a heart attack. *See* J.A. at 71, 80, 109 (Szymanski Dep.); J.A. at 145 (Report of Dr. Helen Winkler). Additionally, the reason the Court addressed the issue of negligent infliction of emotional distress claims in *Gottshall* is because Gottshall and Carlisle alleged negligent infliction of emotional distress claims.[1] *See Gottshall,* 512 U.S. at 537 (Gottshall), 539, 114 S.Ct. 2396 (Carlisle). Szymanski, again by contrast, never asserted a negligent infliction of emotional distress claim. The majority is quick, however, to dismiss his case because it holds that he failed to meet the "zone of danger" test[2] which is only applicable to negligent infliction of emotional distress claims.

## III. HEART ATTACK CLAIMS UNDER THE JONES ACT

I now turn to what I believe is the main issue presented, whether Szymanski can recover for his heart attack under the Jones Act. Heart attacks generally can be compensable injuries under the FELA and the Jones Act as long as the statutory requirements are satisfied. Most of the cases allowing plaintiffs to seek compensation involved heart attacks that occurred either during or shortly after strenuous physical labor or because of adverse physical conditions in the workplace. *See, e.g., Harbin v. Burlington Northern R.R.,* 921 F.2d 129, 131–32 (7th Cir.1990) (summary judgment against plaintiff inappropriate where heart attack caused by heavy physical exertion in area with very poor air quality); *Smith v. Ithaca Corp.,* 612 F.2d 215, 220 (5th Cir.1980) (upholding district court finding that benzene contamination aboard ship caused heart attack that was compensable under the Jones Act).

Several courts have held that heart problems caused by extraordinary non-physical stress are potentially compensable under the FELA and similar legislation. For example, the Ninth Circuit upheld a recovery for a heart attack caused by the stress the employee suffered after an apparently false accusation by the employer. *See Pierce v. Southern Pac. Transp. Co.,* 823 F.2d 1366, 1372 n. 2 (9th Cir.1987). The Missouri Court of Appeals also allowed recovery for aggravation of an employee's heart disease caused by racial harassment by his supervisor. *See Stewart v. Alton & Southern Ry.,* 849 S.W.2d 119, 124–25 (Mo.Ct.App.1993). In a post-*Gottshall* decision the Missouri Court of Appeals rejected the application of *Gottshall* in upholding a plaintiff's FELA claim that his coronary artery disease and gastritis were caused by the railroad's negligence in main-

---

**1.** The majority's reliance on *Metro–North Commuter R.R. v. Buckley,* 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997), is also misplaced. *Buckley* also involved a claim of negligent infliction of emotional distress. *See id.* 521 U.S. at ——, 117 S.Ct. at 2116. Indeed, the plaintiff in *Buckley* had suffered no direct physical harm. *See id.* 521 U.S. at ——, 117 S.Ct. at 2118.

**2.** I do not address whether Szymanski's claim could survive the zone of danger test because I would hold that the test is not applicable in this instance. The majority proclaims that the zone of danger test requires "either actual impact by a physical object or being in the zone of danger for such an impact." Maj. Slip Op. at 594. However, the majority adds in footnote 1 that " 'Physical object' includes, of course, such things as

radiation, gases given off as a result of an explosion, and the like." An explosion on a ship that resulted in the blinding of a worker based only on a flash of light or deafening of a worker based only on the overwhelming noise, does not involve any impact by an "object" yet surely would be covered under the Jones Act. More importantly, as has been pointed out by one of our sister circuits, the Court was unclear in *Gottshall* as to "whether the zone of danger test turns (in the absence of actual physical impact) on risk of physical impact or risk of physical harm." *Bloom v. Consolidated Rail Corp.,* 41 F.3d 911, 914 (3d Cir.1994). Issues concerning the scope of the zone of danger test remain open for resolution in a case where they are properly presented.

**600**

taining proper sleeping facilities and an erratic work schedule. *See Bailey v. Norfolk & Western Ry.*, 942 S.W.2d 404, 411 (Mo.Ct. App.1997). The First Circuit left until another day the question of whether a heart attack caused by harassment was compensable under the FELA, because in that case the defendant had no notice of the harassment. *See Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6–7 (1st Cir.1987) (heart attack caused by harassment not compensable when Conrail not informed of harassment).

This court has allowed recovery both for a plaintiff's back injury and his heart attack suffered more than five years after the initial back injury. *Steele v. Louisville & Nashville R.R.*, 506 F.2d 315, 318–19 (6th Cir.1974). The *Steele* heart attack allegedly was caused by the "personal frustration, the economic frustration and the duress of unemployment" caused by the back injury. *Id.* at 318. The panel did state, however, that the back injury alone would have supported the amount of damages awarded. *Id.* Although these cases were decided before *Gottshall*, I believe that their holdings remain valid. *Gottshall* focused on whether and when emotional distress claims could be compensated pursuant to the FELA, and determined that emotional distress claims would be compensable only when the plaintiff was in the zone of danger of physical impact. The Court noted the FELA's focus on physical injury, and did not purport to void rulings that had permitted recovery for physical injuries.

This survey of the caselaw indicates that physical injuries, such as heart attacks, are compensable under the FELA and the Jones Act when they are negligently caused by physical stress or by extraordinary non-physical stress. Heart attacks caused by ordinary non-physical workplace stress are not compensable, because such plaintiffs will be unable to prove that their employers were negligent in providing a workplace with ordinary workplace stress. An employer breaches no duty by failing to prevent ordinary workplace stress. To hold an employer liable for the results of ordinary workplace stress would surely make that employer an insurer of its employees' health, a result that

I do not believe Congress would intend and that I do not suggest.

In this case, however, the district court erred in believing that *Gottshall* precludes the possibility of recovery for a heart attack negligently caused by physical stress or extraordinary non-physical stress. I would remand so that the district court can analyze whether summary judgment is appropriate on Szymanski's claim using this standard, i.e., the district court should determine whether Szymanski can show a genuine issue that his heart attack at least in part was negligently caused by physical conditions in the workplace or by extraordinary workplace stress. The district court must determine whether there is a genuine issue that Oglebay negligently subjected Szymanski to extraordinary workplace stress by assigning him to work with a gateman that Oglebay knew was incompetent, or whether the stress complained of by Szymanski was within the realm of ordinary workplace stress for a conveyorman and hence not compensable under the Jones Act.

## IV. THE UNSEAWORTHINESS CLAIM

The district court also held that summary judgment was proper on Szymanski's unseaworthiness claim because summary judgment was proper on Szymanski's Jones Act claim. The district court stated that an injured seaman has one claim with separate remedies, relying on *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). The majority properly recognizes that a claim under the Jones Act and an unseaworthiness claim are distinct claims that have separate elements. The majority, however, holds that Szymanski cannot state a claim for unseaworthiness because the injury for which he seeks recovery, in the majority's view, is negligent infliction of emotional distress, which is not compensable under the Jones Act. Once again the majority mischaracterizes Szymanski's claim as one of negligent infliction of emotional distress. Because I believe that Szymanski's claim should be analyzed under a traditional physical injury standard, I dissent from the majority's affirmance of the dismissal of Szymanski's unseaworthiness claim.

 

As the Supreme Court has stated "[the Jones Act] does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." *Miles v. Apex Marine Corp.,* 498 U.S. 19, 29, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Although the remedies available pursuant to a seaman's unseaworthiness cause of action are generally no broader than those available under the Jones Act, the causes of action themselves have different elements and must be analyzed separately. *See id.* at 32–33, 111 S.Ct. 317.

An unseaworthiness claim is based upon the shipowner's absolute and nondelegable duty to "furnish a vessel and appurtenances reasonably fit for their intended use." *Cook v. American Steamship Co.,* 53 F.3d 733, 741 (6th Cir.1995) (quoting *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)). Thus, in an unseaworthiness cause of action, a plaintiff must prove that the ship was not fit for its intended use and that the unseaworthiness was a proximate cause, in the traditional tort sense, of the plaintiff's injury. To prove proximate cause, the "plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Miller v. American President Lines Ltd.,* 989 F.2d 1450, 1463 (6th Cir.1993) (quotation omitted), *cert. denied,* 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993).

An incompetent crew member could make a vessel unseaworthy. *See Waldron v. Moore–McCormack Lines, Inc.,* 386 U.S. 724, 727 n. 4, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967) (unseaworthiness may result when a member of the crew is not competent to meet the tasks arising on a voyage). Thus, I would reverse the district court's order granting summary judgment to Oglebay. On remand, the district court should determine whether Szymanski has produced evidence sufficient to present a genuine issue of material fact on his unseaworthiness claim, while viewing the evidence, including Szymanski's evidence that the gateman on the Courtney Burton was incompetent, in the light most favorable to him.

## V. CONCLUSION

Because the majority analyzed Szymanski's claims using an improper legal standard, I respectfully dissent.