The Jackson Circuit Court entered a summary judgment for the defendant CSX Transportation, Inc., in the plaintiff Judith Sweeney's action filed under the Federal Employer's Liability Act. The action was based on the death of Ms. Sweeney's husband, and it alleged negligence, negligent assignment, and negligent infliction of emotional distress. The Court of Civil Appeals reversed the summary judgment as to two of those claims.Sweeney v. CSX Transp., Inc., 735 So.2d 472 (Ala.Civ.App. 1998). We granted CSX's petition for certiorari review. We affirm.
The pertinent facts were set out in the opinion of the Court of Civil Appeals:
 "CSX and Mrs. Sweeney both submitted the affidavit of Rodney M. Gray. Gray is a CSX employee; he was working with Sweeney on January 4, 1994, the day that Sweeney died. Gray and Sweeney made up a two-man crew on a train bound to Nashville, Tennessee, from Chattanooga, Tennessee. Their first stop after leaving Chattanooga was in Bridgeport, Alabama, where they were to pick up 6 cars. They unhitched the 50 or 60 cars making up their train and left them on another track before picking up the 6 cars. The cars left on the other track rolled back and collided with another train on the main track, causing the moving train to derail. At the time of the collision, Sweeney was in the locomotive of their train; the locomotive was approximately 4,500 feet from the point of impact of the collision and was not connected to the cars involved in the collision. Sweeney and Gray waited for the investigation to take place, and approximately three hours after the collision occurred Sweeney was asked to walk to the CSX office. He apparently walked a few car lengths and suffered a fatal heart attack. *Page 478 
 "In opposition to CSX's motion for a summary judgment, Mrs. Sweeney submitted several affidavits. In her own affidavit, she stated that Sweeney had been fired from his position as CSX's drug and alcohol abuse counselor. He had threatened to sue CSX, because, he contended, he had been fired so that CSX could hire a younger person to take his place. On May 15, 1993, a few months after he was fired, CSX rehired Sweeney and placed him in the position of locomotive engineer. Mrs. Sweeney also stated that her husband had had four heart attacks before May 15, 1993, and that CSX did not conduct a cardiac examination on him before assigning him to this new position. She also stated that he had worked well over 40 hours a week for several months preceding his fatal heart attack. Attached to her deposition were her husband's medical records, showing that he had had a quadruple by-pass operation in 1984; a heart attack in 1987; and continuing treatment for heart disease and hypertension. According to Mrs. Sweeney's affidavit, her husband had had heart attacks in 1984, 1987, and 1991, and had also had a heart attack sometime before his 1984 attack.
 "Mrs. Sweeney also submitted the affidavits of George Spence, Charles Latimer, and Richard Taylor. They stated that . . . a locomotive engineer [has] a very stressful position under normal circumstances and that [the work] becomes even more stressful when there is a derailment. They also stated that it was commonly known that CSX's policy, after a derailment, was to fire the locomotive engineer and conductor of the train involved, regardless of who was at fault. Spence stated that Sweeney was obviously in poor health when he returned to work as a locomotive engineer in May 1993, and that, despite having doctors on its payroll, CSX failed to have a stress test conducted on Sweeney before assigning him to this position. Latimer, a locomotive engineer who has worked for CSX for 29 years, stated that not giving Sweeney a stress test before assigning him to the position of locomotive engineer was contrary to CSX's custom and practice. Latimer, who is also the local chairman of the union grievance committee, stated that another CSX employee had been fired for not informing the railroad of his heart condition and angiogram treatment. Taylor stated that he had had triple bypass surgery in 1991 and that he had had to pass two stress tests before CSX would allow him to return to work."
Sweeney v. CSX Transp., Inc., 735 So.2d at 474. The trial court entered a summary judgment against all of Ms. Sweeney's claims. The Court of Civil Appeals affirmed the summary judgment in part and reversed it in part. It agreed with CSX that, underConsolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), the summary judgment was appropriate on the claim alleging negligent infliction of emotional distress. Sweeney, 735 So.2d at 475. However, the court reversed with respect to the negligence and negligent-assignment claims, holding that Gottshall was inapplicable to those claims and that on those claims CSX was not entitled to a judgment as a matter of law. 735 So.2d at 475-476. We deal only with Ms. Sweeney's claim of negligent assignment, because we see her allegation of negligence (which was, in her complaint, stated in terms of a failure to determine whether Mr. Sweeney was qualified to be reassigned as a locomotive engineer) as being encompassed by her negligent-assignment claim.
When reviewing a summary judgment, we review the record de novo and examine all of the evidence in the light most favorable to the nonmoving party. Hightower Co. v. United States Fidelity Guar. Co., 527 So.2d 698, 701 (Ala. 1988). Here, there is no material factual dispute between the parties; therefore, the summary judgment was appropriate as to the negligent-assignment claim if CSX was *Page 479 
entitled to a judgment as a matter of law on that claim. Ala. R. Civ. P. 56(c). CSX argues here, as it did in the circuit court and the Court of Civil Appeals, that it was entitled to a judgment as a matter of law on that claim because Gottshall precludes any recovery under the claims advanced by Ms. Sweeney. In Gottshall, the Supreme Court adopted the "zone of danger" test for recovery, under FELA, for negligent infliction of emotional distress. 512 U.S. at 555. The Court stated:
 "We believe that allowing recovery for negligently inflicted emotional injury as provided for under the zone of danger test best harmonizes [the purposes of FELA]. Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not."
Id. at 556, 114 S.Ct. 2396. Using this "zone of danger of physical impact" analysis, the Court held that a train dispatcher who became ill after he was forced to work long hours under poor conditions did not have a valid claim under FELA for negligent infliction of emotional distress.[1]512 U.S. at 558, 114 S.Ct 2396. According to the Court, the dispatcher's "work-stress-related claim plainly does not fall within the common law's conception of the zone of danger" and his "complaint was that he `had been given too much — not too dangerous — work to do.'" Id. (citing Lancaster v. Norfolk W. Ry., 773 F.2d 807, 813 (7th Cir. 1985). Based on this language, CSX concludes that any claim of negligence under FELA that involves work-related stress is inseparably intertwined with a claim of negligent infliction of emotional distress and must necessarily engage the "zone of danger" test. Such an interpretation, however, goes well beyondGottshall's reach.
From the very first sentence of the Gottshall opinion, it is clear that the Supreme Court was limiting its discussion to determining "the proper standard for evaluating claims for negligent infliction of emotional distress." 512 U.S. at 535,114 S.Ct. 2396. The Court indicated that it was restricting its consideration to just one tort theory of liability:
 "The term `negligent infliction of emotional distress' is largely self-explanatory, but a definitional point should be clarified at the outset. The injury we contemplate when considering negligent infliction of emotional distress is mental or emotional injury, apart from the tort law concepts of pain and suffering. Although pain and suffering technically are mental harms, these terms traditionally `have been used to describe sensations stemming directly from a physical injury or condition.' The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms."
512 U.S. at 544, 114 S.Ct. 2396. The three major common-law tests the Court examines (of which the "zone of danger" test is one) are all related exclusively to the tort of negligent infliction of emotional distress. 512 U.S. at 546-48, 114 S.Ct. 2396. Furthermore, no language in Gottshall broadens the scope of the opinion so as to apply the "zone of danger" test to any other tort claim.
CSX cites Szymanski v. Columbia Transp. Co., 154 F.3d 591 (6th Cir. 1998), as evidence that Gottshall does apply to all of Ms. Sweeney's claims, including *Page 480 
her negligent-assignment claim. In Szymanski, the United States Court of Appeals for the Sixth Circuit held that Gottshall precluded a seaman, Mr. Szymanski, who had had a work-stress-related heart attack from recovering under either the Jones Act,[2] 46 App. U.S.C. § 688, or under the "unseaworthiness" doctrine.[3] However, the factual claims of the plaintiff in Szymanski are fundamentally different in nature from those associated with a negligent-assignment claim. Under FELA,
 "A railroad has a duty to assign employees to work for which they are reasonably suited. A railroad breaches that duty if it negligently assigns an employee to perform work beyond his capacity. The railroad is negligent if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm."
Fletcher v. Union Pac. R.R., 621 F.2d 902, 909 (8th Cir. 1980) (citations omitted). It is the employer's prior knowledge of an employee's physical condition that is central to the concept of negligent assignment. Kichline v. Consolidated Rail Corp.,800 F.2d 356, 361 (3d Cir. 1986). Szymanski did not suffer from a preexisting physical condition the shipowner knew of before making an assignment; rather, Szymanski developed his physical ailments from the stressful conditions of his job. Szymanski, 154 F.3d at 592-93. Hence, the discussion by the Sixth Circuit concerningGottshall's applicability does not properly apply to a consideration of Ms. Sweeney's negligent-assignment claim. SeeWalsh v. Consolidated Rail Corp., 937 F. Supp. 380, 386-92 (E.D. Pa. 1996) (distinguishing the claim in Gottshall from a negligent-assignment claim by emphasizing an employee's preexisting physical condition known to the employer).
Contrary to CSX's contentions, our holding does not transgress the policy considerations mentioned in the Gottshall opinion. The negligent act contemplated by the negligent-assignment claim is not the employer's maintaining a generally stressful work environment, but rather its placing an employee into a job position that the employer knows or should know is dangerous to that employee.Gottshall's inapplicability to a negligent-assignment claim, therefore, does not "make railroads the insurers of the emotional well-being and mental health of their employees" or turn FELA into an "insurance statute." Gottshall, 512 U.S. at 554, 114 S.Ct. 2396.
As the Court of Civil Appeals noted, Ms. Sweeney presented evidence to the trial court indicating that the job of locomotive engineer was a very stressful job and indicating that CSX knew of Mr. Sweeney's severe heart problems before it assigned him to that job. We agree with the Court of Civil Appeals that Gottshall does not apply to Ms. Sweeney's negligent-assignment claim and that she submitted sufficient evidence to create a jury question whether CSX negligently assigned Mr. Sweeney to a position that CSX knew or should have known would create an unreasonable risk of harm.
AFFIRMED.
Hooper, C. J., and Cook, Lyons, and Johnstone, JJ., concur.
[1] In this consolidated case, the Court also remanded a case for briefing on the question of whether a railroad worker who had watched a co-worker collapse and die as a consequence of the railroad's negligence had a valid FELA claim for negligent infliction of emotional distress. Whether this situation met the requirements of the "zone of danger" test was not adequately argued before the Court. Gottshall, 512 U.S. at 558,114 S.Ct. 2396.
[2] The Jones Act, which provides a remedy for injured seamen, "adopts `the entire judicially developed doctrine of liability' under the Federal Employers' Liability Act (FELA)." AmericanDredging Co. v. Miller, 510 U.S. 443, 456 (1994) (citing Kernan v.American Dredging Co., 355 U.S. 426, 439 (1958)).
[3] The "unseaworthiness" doctrine is "based upon the shipowner's absolute and nondelegable duty to `furnish a vessel and appurtenances reasonably fit for their intended use.'" Szymanski, 154 F.3d at 601 (Moore, J., dissenting) (quoting Mitchell v.Trawler Racer, Inc., 362 U.S. 539, 550 (1960)). *Page 1151