PRYOR, Circuit Judge:
This appeal requires us to decide whether a seaman can recover money damages under the Jones Act, 46 U.S.C. § 30104, for an injury stemming from excessive work hours and an erratic sleep schedule. William Skye, formerly the chief mate of the Sealand Pride, a commercial vessel, suffers from left ventricular hypertrophy, which he complained that his employer, Maersk Line Limited Corporation d/b/a Maersk Line Limited, caused when it negligently saddled him with “excessive duties and duty time” such that he was “overworked to the point of fatigue.” At trial, the jury found Maersk liable to Skye, who the jury found suffered damages of $2,362,299.00, which the district court reduced to $590,574.75 to account for Skye’s comparative negligence. Maersk moved for a judgment as a matter of law on the ground that the decision of the Supreme Court in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), barred Skye’s complaint. The district court denied that motion and entered judgment in favor of Skye. We REVERSE the denial of the motion for a judgment as a matter of law and RENDER judgment in favor of Maersk because Skye’s complaint of an injury caused by work-related stress is not cognizable under the Jones Act, which concerns injuries caused by physical perils. See Gottskall, 512 U.S. at 558, 114 S.Ct. at 2411-12.
I. BACKGROUND
Between 2000 and 2008, William Skye worked on the Sealand Pride as chief mate. The Sealand Pride was first chartered and later operated by Maersk. Skye’s job duties required him to work overtime, which adversely affected his health because of fatigue, stress, and lack of sleep. Skye regularly worked between 90 and 105 hours per week for 70 or 84 days at a time. At sea, Skye worked 12 hours; in port, he might have worked “round the clock.”
In 2000, Skye’s cardiologist diagnosed him with a benign arrhythmia and recommended that Skye change his diet and rest *1264 more. In 2003, Skye returned to his cardiologist, who said his diagnosis had not changed. Skye’s symptoms worsened in 2004 when Maersk began directly managing the Sealand Pride and increased his duty time. Skye worked 12 to 15 percent more overtime hours. And his working hours were replete with arduous duties: logging in cargo carrying hazardous material at various ports for eight hours at a time; inspecting roughly 144 “reefers,” which are refrigerated containers, to ensure they were keeping cargo cold; repairing “cell guides,” which hold cargo containers; and descending six stories via ladders and manholes into the hull of the Sealand Pride to inspect and repair the interior of the ballast tanks, which hold water to balance the ship.
By 2008, Skye was experiencing headaches, a sore back, and a burning sensation in his chest in addition to his arrhythmia, so Skye returned to his cardiologist, who diagnosed him with left ventricular hypertrophy, a thickening of the heart wall of the left ventricle, which his cardiologist attributed to hypertension. Skye’s cardiologist concluded that Skye’s “continued physical stress related to his job, with long hours and lack of sleep” caused his labile hypertension — intermittent high blood pressure while on the job — which, in turn, caused his left ventricular hypertrophy. The cardiologist advised Skye to stop working on the vessel.
In 2011, Skye filed a complaint against Maersk for negligence under the Jones Act. Skye alleged that his working conditions caused his left ventricular hypertrophy and that Maersk was negligent when it failed to provide him with reasonable working hours, an adequate crew, and adequate rest hours and instead “overworked [him] to the point of fatigue.” He alleged that these working conditions led to “physical damage to [his] heart.”
• At trial, Skye and his cardiologist testified that his excessive hours and resulting stress were the most likely causes of his injury. Skye testified that his arduous work schedule and his lack of sleep had an adverse effect on his health. His cardiologist testified that Skye’s working conditions “were a substantial contribution” to his left ventricular hypertrophy. The cardiologist opined that Skye developed labile hypertension because of the “stress of his job as chief mate” and “the lack of regular sleep,” which in turn “caused the left ventricular hypertrophy.” The cardiologist explained that “people who live under constant physical stress secrete large amounts of adrenaline” as part of a “fight or flight response.” And when “adrenaline is secreted for long periods of the day, that has a deleterious effect on their health.” He continued, “Long working hours and stress can lead to this fight or flight response, and that, in turn, can lead to left ventricular hypertrophy.”
At the conclusion of trial, Maersk moved for a directed verdict on the grounds that Skye could not recover for money damages for an injury caused by work-related stress and, alternatively, that the statute of limitations barred his claim. Maersk argued that Gottshall, in which the Supreme Court held that plaintiffs could not recover for work-related stress under the Federal Employers’ Liability Act, barred Skye’s claim as a matter of law. The district court denied the motion.
Before the jury deliberated, the court instructed the jury as follows that it must decide whether Skye’s injury and its causes were physical or emotional:
The law holds that a seaman such as the plaintiff cannot receive compensation for a purely emotional injury. A purely emotional injury is an injury that has no physical causes, but, rather was solely caused by the injured person’s percep *1265 tion of a nonphysical stress. The injured person, however, may receive compensation for an injury caused in any part by physical stress. You will need to determine whether plaintiffs injury is a physical one or an emotional one. If you determine it is an emotional one, in order to recover, plaintiff has the burden of proving by a preponderance of the evidence that his injury was sustained as a result of his fear for his own physical safety or incurred while in a zone of immediate physical danger.
The district court provided the jury with a special verdict form that required it to decide whether Skye’s injury was “physical” or “emotional.”
The jury returned a verdict finding that Skye sustained a physical injury, but that Skye was 75 percent at fault for his injuries. It found that Skye suffered damages of $2,362,299.00, which the district court reduced to $590,574.75 to account for Skye’s comparative negligence. After the verdict, Maersk moved for a judgment as a matter of law, which the district court denied.
II. STANDARD OF REVIEW
We review the denial of a motion for a judgment as a matter of law de novo and apply the same standards as the district court. Ash v. Tyson Foods, Inc., 664 F.3d 883, 892 (11th Cir.2011). We will reverse the denial of a motion for a judgment as a matter of law “only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict.” Id. (internal quotation mark omitted). “We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence.” Lambert v. Fulton Cnty., Ga., 253 F.3d 588, 594 (11th Cir.2001). ‘We view all the evidence and draw all inferences from it in the light most favorable to ... the nonmoving party.” Ash, 664 F.3d at 892.
III. DISCUSSION
The Jones Act provides a cause of action in negligence for “a seaman” personally injured “in the course of employment,” 46 U.S.C. § 30104, in the same way that the Federal Employers’ Liability Act provides a cause of action in negligence for injured railroad employees against their employers, 45 U.S.C. §§ 51-60. The Jones Act incorporated the remedial scheme of the Federal Employers’ Liability Act, and case law interpreting the latter statute also applies to the Jones Act. 46 U.S.C. § 30104 (“Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.”); see also O’Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 38-39, 63 S.Ct. 488, 490, 87 L.Ed. 596 (1943).
Not all work-related injuries are cognizable under the Federal Employers’ Liability Act and, by extension, the Jones Act. See Gottshall, 512 U.S. at 555-56, 114 S.Ct. at 2410-11. The Supreme Court has made clear that these statutes are “aimed at ensuring ‘the security of the person from physical invasions or menaces.’ ” Id. (emphasis added) (quoting Lancaster v. Norfolk & W. Ry. Co., 773 F.2d 807, 813 (7th Cir.1985)). For employers to be liable, the employees’ injuries must be “caused by the negligent conduct of their employers that threatens them imminently with physical impact.” Id. at 556, 114 S.Ct. at 2411.
 Skye’s injury is not cognizable under the Jones Act even when we draw all inferences from the evidence presented to the jury in the light most favorable to him and assume that his work schedule caused him to develop left ventricular hy *1266 pertrophy. The Jones Act does not allow a seaman to recover for injuries caused by work-related stress because work-related stress is not a “physical peril[].” Id. at 555, 114 S.Ct. at 2410. The district court erred when it denied the motion of Maersk for a judgment in its favor as a matter of law.
Skye’s complaint fails for the same reason that plaintiff Alan Carlisle’s complaint failed in Gottshall. In Gottshall, the Supreme Court ruled that injuries caused by the long-term effects of work-related stress are not cognizable under the Federal Employers’ Liability Act because they are not caused by any physical impact or fear from the threat of physical impact. 512 U.S. at 558, 114 S.Ct. at 2411-12. Carlisle sued his employer after suffering from insomnia, headaches, depression, weight loss, and a nervous breakdown attributable to “work[ing] 12- to 15-hour shifts for weeks at a time.” Id. at 539, 114 S.Ct. at 2402. Carlisle alleged that his employer failed to provide him with a safe workplace “by forcing him to work under unreasonably stressful conditions” and that its failure “resulted in foreseeable stress-related health problems.” Id. The Supreme Court adopted the zone-of-danger test for injuries not caused by a physical impact; Carlisle’s injuries were compensable only if Carlisle was injured when he was within the zone of danger of a physical impact caused by his employer’s negligence. Id. at 556, 114 S.Ct. at 2410-11 (“[A] worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not.”). The Supreme Court held that “Carlisle’s work-stress-related claim plainly does not fall within the common law’s conception of the zone of danger, and Carlisle makes no argument that it does.... [W]e will not take the radical step of reading [the Federal Employers’ Liability Act] as compensating for stress arising in the ordinary course of employment.” Id. at 558, 114 S.Ct. at 2411-12; see also Smith v. Union Pac. R.R. Co., 236 F.3d 1168, 1173-74 (10th Cir.2000) (“[A] work schedule is not the physical peril against which [the Federal Employers’ Liability Act] protects.”); Szymanski v. Columbia Transp. Co., 154 F.3d 591, 594-95 (6th Cir.1998) (en banc) (holding that the estate of a seaman could not recover under the Jones Act for a fatal heart attack allegedly induced by excessive work hours); Crown v. Union Pac. R.R. Co., 162 F.3d 984, 985 (8th Cir.1998) (refusing recovery for extreme weight gain, carpal tunnel syndrome, knee joint problems, cough syncope syndrome, sleep apnea, diabetes, various addictions, and a nervous breakdown, all of which were attributable to excessive work hours).
Under Gottshall, Skye’s complaint is not cognizable under the Jones Act. His complaint parallels Carlisle’s complaint of an injury induced by overwork. Skye complained that he was “injured while aboard the vessel” because “[rjeduced manning and other conditions caused excessive duties and duty time.” And Skye alleged that Maersk was negligent when it “[f]ail[ed] to provide [him] with reasonable working hours,” “adequate personnel, time, and equipment,” and “adequate rest hours,” and “overworked [him] to the point of fatigue.”
As the Supreme Court explained in Gottshall, the “central focus” of the Federal Employers’ Liability Act, and the Jones Act by extension, is “on physical perils.” 512 U.S. at 555, 114 S.Ct. at 2410. An arduous work schedule and an irregular sleep schedule are not physical perils. That Skye developed a “physical injury” is no matter; the cause of his injury was work-related stress. See Szymanski, 154 F.3d at 594-95. Carlisle too had physical injuries — weight loss and headaches — but *1267 a physical injury is not enough. Gottshall, 512 U.S. at 539, 558, 114 S.Ct. at 2402, 2411-12. Compensating Skye for his injury would potentially lead to, in the words of the Supreme Court, “a flood of trivial suits, the possibility of fraudulent claims ... and the specter of unlimited and unpredictable liability” because there is no way to predict what effect a stressful work environment — compared to a physical accident such as an exploding boiler — would have on any given employee. See id. at 557, 114 S.Ct. at 2411. Skye’s complaint of a physical injury caused by work-related stress is foreclosed by binding precedent of the Supreme Court, and the judgment in his favor cannot stand as a matter of law. Id. at 558, 114 S.Ct. at 2411-12. Because we decide that Skye’s complaint is not cognizable under the Jones Act, we need not decide whether the statute of limitations bars his claim.
IV. CONCLUSION
We VACATE the judgment awarding Skye $590,574.75. We REVERSE the denial of the motion of Maersk for a judgment as a matter of law and RENDER judgment in favor of Maersk.