Affirmed and Opinion filed June 28, 2007








Affirmed and Opinion filed June 28, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00419-CV

____________

 

CLARENCE ABRAHAM, ET AL., Appellants

 

V.

 

UNION PACIFIC RAILROAD COMPANY, Appellee

 



 

On Appeal from the 295th
District Court

Harris County, Texas

Trial Court Cause No. 2000-38068

 



 

O P I N I O N

Appellants, 293 former and current employees of Union
Pacific Railroad Company,[1]
appeal a summary judgment in favor of Union Pacific.  In a single issue,
appellants argue that their medical causation evidence was sufficient to overcome
appellee=s motion for
summary judgment.  We affirm.








I.  Background

Appellants filed a toxic tort suit under the Federal
Employers Liability Act (AFELA@) alleging that
exposure to creosote used in the treatment of railroad ties caused appellants
to suffer diseases of the throat, lungs, and skin including cancer.  See
45 U.S.C. '' 51-60.  The trial court set a trial date for a Atest plaintiff,@ Leslie Duncan. 
Mr. Duncan worked at Houston Wood Preserving Works where he loaded treated
railroad cross-ties onto railroad cars.  Medical records indicate that Mr.
Duncan smoked cigarettes and regularly drank a moderate amount of alcohol.  Mr.
Duncan died from throat and lung cancers in 2002.  

After appellants produced the affidavit of their medical
expert, Dr. James Dahlgren, appellee filed a motion for summary judgment on
both traditional and no evidence grounds.  Appellee based its motion on the
ground that Dr. Dahlgren=s affidavit was no evidence of causation
because it did not contain scientifically reliable and legally sufficient
expert evidence.  The trial court granted summary judgment in favor of appellee
against Mr. Duncan.  Almost a year later, appellee filed a motion for summary
judgment against the remaining appellants.  The trial court subsequently
granted summary judgment against all appellants.

II.  Standard of Review








A no‑evidence motion for summary judgment must be granted
if: (1) the moving party asserts that there is no evidence of one or more
specified elements of a claim or defense on which the adverse party would have
the burden of proof at trial; and (2) the respondent produces no summary
judgment evidence raising a genuine issue of material fact on those elements.  See
Tex. R. Civ. P. 166a(i).  In
reviewing a no‑evidence summary judgment, we review the record in the
light most favorable to the nonmovant to determine whether more than a
scintilla of evidence was presented on the challenged elements of the nonmovant=s claim.  See
Wal‑Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). 
When a trial court=s order granting a no evidence summary
judgment does not specify the ground relied upon for its ruling, the summary
judgment will be affirmed if any of the theories advanced is meritorious.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).

A party may object to the reliability of expert testimony
either before trial or when it is offered.  See Guadalupe‑Blanco River
Auth. v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002). Once such an objection is
made, the burden is on the proponent of the evidence to establish its
reliability.  Id.  A trial court=s decision whether
to admit expert testimony is reviewed for abuse of discretion.  Id.  In
addition to being a determinant of the admissibility of such evidence, the
reliability of expert testimony is also a prerequisite to its legal
sufficiency.  See Merrell Dow Pharms. v. Havner, 953 S.W.2d 706, 714
(Tex. 1997).  In the context of a motion for summary judgment where, as here,
expert evidence relied on by the nonmovant is objected to by the movant based
on reliability, the evidence must be both admissible and legally sufficient to
withstand the no evidence challenge.  See Frias v. Atlantic Richfield Co.,
104 S.W.3d 925, 928 n. 2 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).

III.  Causation

A.      The FELA
Causation Standard

Under FELA, every railroad engaging in interstate commerce
is liable in damages to any employee injured during his employment when such
injury results in whole or in part from the railroad=s negligence or by
reason of any defect or insufficiency due to its negligence.  See 45
U.S.C. ' 51 (1988). 
Plaintiffs must prove the common-law elements of negligence, duty, breach,
foreseeability and cause-in-fact; however, under FELA, the plaintiff carries
only a slight burden on causation.  Union Pac. R.R. Co. v. Williams, 85
S.W.3d 162, 168 (Tex. 2002).  Accordingly, the test of causation is whether the
proof justifies, within reason, the conclusion that employer negligence played
any part, even the slightest, in producing the injury or death for which the
claimant seeks damages.  Rogers v. Missouri Pacific Ry., 352 U.S. 500,
507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957). 

 








B.      Necessity
of Expert Testimony

Despite the lower burden under FELA, a plaintiff still
bears the burden of presenting evidence from which a jury could conclude the
existence of a probable or likely causal relationship as opposed to merely a
possible one.  Edmonds v. Illinois Cent. Gulf R.R. Co., 910 F.2d 1284,
1288 (5th Cir. 1990).  The causal link between an event sued upon and the plaintiffs= injuries must be
shown by competent evidence.  Morgan v. Compugraphic Corp., 675 S.W.2d
729, 731 (Tex. 1984).  Lay testimony will suffice when general experience and
common sense will enable a lay person fairly to determine the causal
connection.  Praytor v. Ford Motor Co., 97 S.W.3d 237, 241 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  The existence of a causal connection between exposure
to a certain chemical and injury or disease requires specialized expert
knowledge and testimony because such matters are not within the common
knowledge of lay persons.  Pilgrim=s Pride Corp. v.
Smoak, 134 S.W.3d 880, 893 (Tex. App.CTexarkana 2004,
pet. denied).  Therefore, in this case in which the plaintiffs have alleged
that exposure to creosote caused their diseases, expert testimony is required
to enable lay persons to determine whether the exposure caused the disease.

C.      Reliability
of Expert Testimony 








Despite the fact that appellants assert a claim under the
federal statute, the trial court must follow state procedure in determining the
reliability of expert testimony.  See Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402, 406 (Tex. 1998).  To be admissible into evidence, an expert
witness=s testimony must,
among other things, be reliable.  E. I. Dupont de Nemours and Co. v.
Robinson, 923 S.W.2d 549, 565 (Tex. 1995).  In Robinson, the Texas
Supreme Court set forth a two‑part test governing the admissibility of
expert testimony:  (1) the expert must be qualified; and (2) the testimony must
be relevant and be based on a reliable foundation.  Id. at 556.  Expert
testimony is unreliable if: (1) it is not grounded in the methods and
procedures of science and is thus no more than subjective belief or unsupported
speculation; or (2) there is too great an analytical gap between the data upon
which the expert relies and the opinion he offers.  Cooper Tire & Rubber
Co. v. Mendez, 204 S.W.3d 797, 800 (Tex. 2006).  The purpose of the
reliability determination is not to decide whether the expert=s conclusions are
correct, but only whether the analysis used to reach them is reliable.  Exxon
Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002).  

D.      Expert
Testimony under the FELA Causation Standard

1.       Federal
Authority

Appellants rely on Hines v. Conrail Corp., 926 F.2d
262 (3rd Cir. 1991), to validate their expert=s testimony.  In
that opinion, the Third Circuit opined that causation under FELA is broadly
interpreted and that Aa medical expert can testify that there
was more than one potential cause of a plaintiff=s condition.@  Id. at
268.  The court further concluded that a trial court is justified in
withdrawing issues from the jury=s consideration
only in those rare instances where there is a zero probability either of
employer negligence or that any such negligence contributed to the injury of
the employee.  Id., citing Pehowic v. Erie L.R.R., 430 F.2d 697,
699B700 (3rd Cir.
1970).  The Hines court found that by enacting FELA, Congress desired to
Asecure jury
determinations in a larger proportion of cases than would be true of ordinary
common law actions.@  926 F.2d at 269, quoting Boeing Co.
v. Shipman, 411 F.2d 365, 371 (5th Cir. 1969), overruled on other
grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 336 (5th
Cir. 1997).  The court further held that the standard of causation under FELA
can significantly influence a determination of the admissibility of an expert=s testimony.  926
F.2d at 269.  Thus, the court in Hines found that FELA=s liberal standard
of causation required the admission of evidence that might have been excluded
in a non-FELA case.  See id.








Two years after Hines, the Supreme Court issued Daubert
v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469
(1993), regarding the reliability of expert testimony.  In Robinson, the
Texas Supreme Court adopted the Daubert standards for assessing the
reliability of expert testimony.  923 S.W.2d at 557.  Several federal courts
have addressed the tension between the Daubert/Robinson standard of
admission of expert testimony and the FELA standard on causation for submission
of a case to a jury.  Those courts have found that the standard of causation
under FELA and the standards of admission of expert testimony under the rules
of evidence are distinct issues and do not affect each other.  See In re
Paoli R.R. Yard PCB Litig., 35 F.3d 717, 743 (3rd Cir. 1994); Claar v.
Burlington Northern R.R. Co., 29 F.3d 499, 503 (9th Cir. 1994); In re
Conrail Toxic Tort Fela Litig., No. CIV. A 94-11J, Civ. A 94-4J, 1998 WL
465897 (W.D. Pa. Aug. 4, 1998) (not released for publication).  

The lower burden under FELA does not mean that, in FELA
cases, courts must permit expert testimony that would not be admissible in
other contexts.  Claar, 29 F.3d at 503.  Despite the lower causation
standard under FELA, plaintiffs must still demonstrate some causal connection
between a defendant=s negligence and their injuries.  Mayhew
v. Bell S.S. Co., 917 F.2d 961, 964 (6th Cir. 1990); Edmonds, 910
F.2d at 1288.  In a FELA case, the Daubert/Robinson standard of
admissibility extends to each step in an expert=s analysis all the
way through the step that connects the work of the expert to the particular
case.  In re Paoli,, 35 F.3d at 743.  As long as a FELA plaintiff=s expert presents
scientifically reliable evidence that the toxic exposure could have played some
role, however small, in causing the plaintiff=s injuries, the
testimony should be admitted under the FELA standard.  Savage v. Union Pac.
R.R. Co., 67 F.Supp.2d 1021, 1028 (E.D. Arkansas 1999).

2.       State Authority








At least two Texas Courts of Appeals have addressed the
issue of the application of Robinson and Havner to the relaxed
FELA causation standard.  See Missouri Pac. R.R. Co. v. Navarro, 90
S.W.3d 747, 750B51 (Tex. App.CSan Antonio 2002,
no pet.); Coastal Tankships, U.S.A., Inc. v. Anderson, 87 S.W.3d 591,
610 (Tex. App.CHouston [1st Dist.] 2002, pet. denied).[2] 
In Navarro, the San Antonio Court of Appeals, recognizing FELA=s Afeatherweight@ burden of proof,
distinguished the concepts of burden of proof from admissibility of evidence. 
It held that the lower FELA burden Ahas not been
generally applied to the admissibility of expert testimony.@  Navarro,
90 S.W.3d at 751.  This conceptual distinction is described as follows: AIn [a] FELA case,
the Daubert standard of admissibility of expert evidence >extends to each
step in an expert=s analysis all the way through the step
that connects the work of the expert to the particular case.=@  Id. 

In Anderson, the First Court of Appeals also
addressed the admissibility of expert testimony under the Afeatherweight@ causation
standard.  In that case, the court held that the causation standard under FELA
and the Jones Act cannot transform no evidence into some evidence.  Id.
at 610.  The majority opinion noted that in determining admissibility of expert
testimony, the proper focus is not on the causation burden of proof, but on
whether the expert opinion testimony is reliable Ain the first
place.@  Id. 
Therefore, if the expert testimony is unreliable under Havner and Robinson,
it is no evidence, Anot even a feather=s weight.@  Id.

Appellants contend that the trial court improperly applied Havner
to require a higher level of scientific proof than is required in FELA cases. 
They partially rely on the Navarro concurrence, in which one justice
lamented that the precedent the courts of appeals must follow fails to consider
the special burden of proof that a plaintiff must bear in a FELA action.  We
note that the primary case cited in the concurrence, Hines, was decided
before Daubert and Robinson, that is to say, before the
establishment of standards for admissibility of expert testimony.  Therefore, we
do not find Hines to be persuasive.  Moreover, the accepted distinction
between burden of proof and admissibility of evidence defeats appellant=s argument that we
are improperly applying Havner. 

E.      Does Dr.
Dahlgren=s Opinion Present Scientifically
Reliable Evidence that Appellants= Exposure to
Creosote Played Some Role in Causing Their Injuries?








In his affidavit, Dr. Dahlgren states that he is a medical
doctor with board certification in internal medicine and has over thirty years= experience in
occupational and environmental toxicology.  He is of the opinion that Mr.
Duncan=s throat and lung
cancers were caused by exposure to coal tar creosote while working at appellee=s wood treatment
plant.  Dr. Dahlgren states he based his opinion on coal tar and creosote studies
because both substances contain polycyclic aromatic hydrocarbons (PAHs) in
different concentrations.  He relied on scientific and medical literature
revealing that cigarette smoke contains PAHs and that cigarette smokers are at
risk for throat and lung cancer due to PAH exposure. 

Dr. Dahlgren reviewed the medical records of all
plaintiffs, the health records of nearly all of the plaintiffs, each of the
plaintiffs= answers to interrogatories, and the depositions of
those plaintiffs that were taken.  Dr. Dahlgren opined:

Assuming regular daily exposure to
the creosote material on the skin and through breathing the vapors for at least
the equivalent of one work year, the above-referenced evidence together
supports my opinion that plaintiffs= claimed cancers
and non-malignant respiratory, skin, and neurological diseases were caused at
least in part by their chronic exposure to the toxic creosote.  It is my
professional opinion that plaintiffs= claimed cancers
and non-malignant respiratory, skin, and neurological diseases were caused at
least in part by their chronic exposure to the toxic creosote.

Dr. Dahlgren concluded that, A[t]he evidence
that coal tar creosote is a carcinogen is not ambiguous.  No serious scientist
would question that the main ingredient in creosote (PAHs) are [sic]
carcinogenic.@  Dr. Dahlgren specifically relied on studies
conducted by the Environmental Protection Agency (AEPA@), the National
Creosote Council, the United States Agency for Toxic Substances and Disease
Registry (AATSDR@), the National Institute of Safety and
Health (ANIOSH@), and the
International Agency for Research on Cancer (AIARC@).  Dr. Dahlgren
further reviewed epidemiological studies published in the Scandinavian
Journal of Worker and Environmental Health and the Journal of
Occupational Health.  Finally, Dr. Dahlgren relied on his own study
conducted on residents living next to a wood treatment plant.








Appellee contends that Dr. Dahlgren=s causation
opinion is flawed because he did not demonstrate knowledge as to the amount of
exposure each of the plaintiffs had to creosote.  Knowledge of the extent of
exposure to a potentially harmful substance is essential to any reliable expert
opinion that the particular substance caused a disease.  See Savage, 67
F.Supp.2d at 1031.  To carry the burden of proving a plaintiff=s injury was
caused by exposure to a specific substance, the plaintiff must demonstrate the
levels of exposure  hazardous to human beings generally as well as the
plaintiff=s actual level of exposure.  Austin v. Kerr-McGee
Refining Corp., 25 S.W.3d 280, 292 (Tex. App.CTexarkana 2000, no
pet.). 

In attempting to determine specific exposure levels, Dr.
Dahlgren referred to the Creosote Council Study of 2001 and the 2003 EPA
document.  The Council study was conducted to determine the exposure to
creosote of workers applying creosote end use products to wood poles and
railroad ties.  The test subjects were divided into treatment plant job
categories.  Creosote skin and inhalation exposure was measured based on an
eight-hour work day by plant worker category.  The EPA relied on the exposure
data in the Creosote Council report and gave descriptions of the job categories
relied on by the Creosote Council report.  The EPA report stated that the EPA
determined there are potential exposures to mixers, loaders, applicators, and
other handlers during typical use-patterns associated with creosote and from
use in commercial and industrial settings.  The EPA reported that ACreosote is rated
as a B1 probable human carcinogen based on limited evidence of the association
between occupational creosote contact and subsequent tumor formation.@  The EPA
concluded that, ACancer risks for all handler scenarios
exceed the level of concern . . .  for occupational handlers.@ 

In his deposition, Dr. Dahlgren testified that he could
extrapolate from those studies the level of exposure for the plaintiffs in this
lawsuit.  Dr. Dahlgren testfied as follows:

Q.  So in determining exposure levels, you referred to the 2003 EPA
document when forming your C when determining what the exposure levels were for the Abraham
plaintiffs?

A.  Yes.  We can C

* * * * *

[Dr. Dahlgren]:  We can extrapolate from those studies to what was
going on with the workers in this Houston wood treatment plant that are the
subject of this lawsuit.








Q.  And did you perform an extrapolation from the 2003 EPA document?

* * * * *

[Dr. Dahlgren]:  I think I just stated that I did.

Q.  Did you C do you have any notes that reflect
the extrapolation C

* * * * *

Q.  C that you conducted?

[Dr. Dahlgren]:  I didn=t take any notes.

Q.  What type of extrapolation did you perform?

A.  I=ve already stated that we looked at
those C the paper published by C or the EPA document which reflects
the Creosote Council study, and we compared the results of those studies to our
workers.

And the way we did that is by pointing out the deposition testimony
where they describe their exposures as becoming wet with creosote on their
clothing, touching the creosote freshly treated wood, touching the actual
creosote oil, getting it on their person, breathing the vapors from the
exposures.  All of those things reflect a dose of exposure that those people
had.

And in terms of quantifying it, we can say that the Creosote Council
study would have been similar.

But as I=ve also modified,
they probably had higher exposures in the workers subject to this study than were
even reflected in the Creosote Council studies because of what they stated in
their study, which is that exposures these days are lower than they would have
been in prior decades.








Even if the EPA study coupled with the Creosote Council
study and the other studies reviewed by Dr. Dahlgren could be considered
reliable evidence that creosote exposure at certain levels causes disease in
human beings generally, appellants have not produced reliable evidence that
they were exposed to those levels of creosote.  The EPA study found an
increased risk of cancer for all workers categorized as Ahandlers.@[3]  The study did
not address office personnel and workers in non-treating areas because the
Creosote Council found that those workers Aare far less
likely to be exposed to creosote than are those workers who are directly
involved in the treatment process.@ Appellants have
presented no evidence as to which plaintiffs may fall into certain worker
categories.  

Appellants prepared a chart listing each of the plaintiffs,
their age, level of exposure, illness summary, and illness category.  Under the
column entitled, AExposure Rating,@ each individual=s exposure is
given a value of low, medium, or high, and his or her years of employment with
the railroad company are listed.  No job categories are listed in the chart. 
Appellants contend that in preparing the chart Dr. Dahlgren reviewed the
plaintiffs= interrogatories and used their job categories to
extrapolate the level of exposure.  However, Dr. Dahlgren admitted he took no
notes of this extrapolation.  Appellants did not attach the interrogatories or
depositions to their response to motion for summary judgment in the trial
court.  Therefore, appellants produced no evidence from which the trial court
could determine whether appellants were exposed to similar levels of creosote
that led the EPA to find an increased risk of disease.  

A plaintiff must prove the level of exposure using
techniques subject to objective, independent validation in the scientific
community.  See Moore v. Ashland Chemical, Inc., 151 F.3d 269, 276 (5th
Cir. 1998).  Scientific knowledge of the harmful level of exposure to a
chemical plus knowledge that the plaintiffs were exposed to such quantities are
minimal facts necessary to sustain the plaintiffs= burden in a toxic
tort case.  Allen v. Pennsylvania Engineering Corp., 102 F.3d 194, 199
(5th Cir. 1996).  Appellants need not produce a mathematically precise table
equating levels of exposure with levels of harm to show that they were exposed
to toxic levels of creosote, but they must produce evidence from which a
reasonable person could conclude that their exposure probably caused their
injuries.  See Bonner v. ISP Technologies, Inc., 259 F.3d 924, 928 (8th
Cir. 2001).  Appellants must show that they were exposed to creosote and that
their exposure was equal to or greater than the exposure in the studies on
which they rely.  Navarro, 90 S.W.3d at 755B56.  








In Navarro, the plaintiff=s expert, as in
this case, based calculations of exposure on job categories.  Id. at
756.  In that case, the expert relied on only one study that classified each
job category with specific numerical values of exposure to diesel exhaust.  Id. 
The court found that the expert=s testimony was not reliable because he
used measurements different from those used in the study and he compared the
plaintiff=s exposure level to those of workers in the study who
held different jobs than the plaintiff.  Id. 

In this case, as in Navarro, the plaintiffs= expert relied on
only one study that classified job categories and the level of exposure that
correlated with each job category.  Unlike the expert in Navarro,
however, Dr. Dahlgren did not provide the trial court with the information it
needed to test his opinions.  Dr. Dahlgren did not, in his affidavit, or in his
deposition, correlate the plaintiffs with the job categories listed in the EPA
study.  Dr. Dahlgren merely assigns each plaintiff an exposure rating based on
length of employment. We can find no evidence of whether each of the 293
plaintiffs were clerical workers, mixers, loaders, applicators, etc.  Even
assuming this to be the most precise conclusion that can be drawn from the
limited data available, such indefinite measurements of exposure are subject to
a wide variance and largely open to speculation. 








Appellants rely on the Fourth Circuit=s opinion in Westberry
v. Gislaved Gummi AB, 178 F.3d 257 (4th Cir. 1999) for the
proposition that specific exposure levels are not required for a reliable expert
medical causation opinion.  The expert in that case relied on a differential
diagnosis to opine that the plaintiff=s exposure to
airborne talc caused the aggravation of a pre-existing sinus condition.  The
defendant moved to exclude the opinion  because the expert Ahad no means of
assessing what level of exposure was adequate to produce the sinus irritation
Westberry experienced.@  Id. at 263.  The court rejected
the defendant=s argument based on the plaintiff=s testimony that
he was exposed to very high levels of talc.  Id. at 264.  The plaintiff
in Westberry testified that when he removed gaskets from shipping boxes,
the gaskets, which were black, had so much talc on them that they appeared to
be white or gray.  Talc was released into the air as he worked with the
gaskets;  at the close of the workday, plaintiff was required to blow off his
work area, stirring up all the talc that had fallen during the day.  Id. 
The court found this testimony was sufficient to permit the trial court to
conclude that the plaintiff was exposed to high levels of airborne talc.  Id.

Unlike the plaintiff in Westberry, the plaintiffs in
this case have not produced sufficient evidence of their levels of exposure. 
Appellants argue they presented similar evidence in their depositions when they
describe their exposures as Abecoming wet with creosote on their
clothing, touching the creosote freshly treated wood, touching the actual
creosote oil, getting it on their person, breathing the vapors from the
exposures.@  In Dr. Dahgren=s opinion, all the
plaintiffs had Aprolonged@ exposure over a
period of at least one year.  However, plaintiffs have produced no scientific
data showing that the extent and nature of their creosote exposure is the same
or similar to the exposure necessary to promote the development of disease. 
For this reason, Dr. Dahlgren=s opinions do not meet the reliability
standards under Daubert and Robinson.

Considering the evidence in a light most favorable to
appellants, we find they have failed to produce evidence that their exposure
was equal to or greater than the exposure in the studies on which they rely. 
There is no reliable scientific evidence to connect appellants= exposure to
creosote to appellants= injuries other than the unsupported
assertion of Dr. Dahlgren.  Appellants= evidence,
therefore, cannot withstand appellee=s no-evidence
challenge.

Accordingly, the judgment of the trial court is affirmed.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Opinion filed June 28, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Edelman.

 

 








Appendix

List of Appellants













Clarence Abraham;
Delois Abraham, as Personal Representative and/or as a statutory heir of the
Estate of Dalton Abraham, Deceased; Milton J. Abraham; Alvin Alexander; Caffery
Alexander; Cliffton J. Alexander; Clovis Alexander; Ernest Alexander; Ernest J.
Alexander; Lionel J. Alexander; Melton Alexander; Norris Alexander, Patrick
Alexander; Russell J. Alexander; Shelton Alexander; Wilbert J. Alexander; Paul
J. Alfred; Gabriel Almeida; Domingo Alonso; Leo D. Anderson; Olivia Anderson,
as Personal Representative and/or as a statutory heir of the Estate of Orise
Anderson, Deceased; Charles Arceneaux, as Personal Representative and/or as a
statutory heir of the Estate of Wilton J. Arceneaux, Deceased; Charles
Arceneaux; Stanford Archie; John W. Arnold Jr.; Freddie L. Arthur; Michael E.
Artzt; Helen Mack, as Personal Representative and/or as a statutory heir of the
Estate of Willie Austin, Deceased; Danny Baisey; Leroy J. Baptiste; Carroll J,
Barber; Darrell Barber; Harold Barber, Jr., as Personal Representative and/or
as a statutory heir of the Estate of Harold Barber, Deceased; Ronald Bass;
Herbert Batiste; Jewel Bennett; Jacqueline Y. Bernard; Harvey Black; Horace G.
Black; Louis C, Black; Franck C. Blake; Nolton J. Blanchard; Mildred Bland, as
Personal Representative and/or as a statutory heir of the Estate of Vernon
Bland, Deceased; Jessie Blanton, Jr.; Rodney D. Blanton; Acy Bluford, Jr.,
Joseph H. Bonin; Jimmy Boykin; Vicki Lounge, as Personal Representative and/or
as a statutory heir of the Estate of Thomas B. Brannon, Deceased; William R
Brazzil; Marvin Britton; Eugene Brown; Ronald Brown; Leslie Bryan; Curtis
Bryant; Richard C Bryant; Keith A. Burley; Fred A. Burton; Lloyd D. Busby,
Christopher A, Bush, Herbert Bushnell, as Personal Representative and/or as a
statutory heir of the Estate of Edwin Bushnell, Deceased; Herbert Bushuell;
Dean Bullara; Lee R, Calais; August R. Caldwell; Sorney Calvert; Alfonso
Cardenas, Jr., Charles Carmouche; Rafael Casanova, Jr.; Rudolph Castaneda;
Clarence Celestine; Kenneth Charles; Michael A. Charles, Anna M. Charles, as
Personal Representative and/or as a statutory heir of the Estate of Russell E
Charles, Sr., Deceased; John F. Citizen; Jerome Clark; William M. Coleman;
Johnnie W Colvin; Phillip Comeaux, Robert Comeaux, Alton Cormier; Delbert
Courtney; Bernard Cramer; Elton Crawford, as Personal Representative and/or as
a statutory heir of the Estate of Alton Crawford, Deceased; Elton Crawford;
John D. Cross; Stephen M. Currie; Leonard Curry; Darryl Davis; Willie P Davis;
Jamesetta Davis, as Personal Representative and/or as a statutory heir of the
Estate of Albert Davis, Sr., Deceased; Robert J. Deese; Charles E. Dennis;
Joseph Derouselle; Eugene Drain; Paul Dumas, Jr.; Mary Duncan, as Personal
Representative and/or as a statutory heir of the Estate of Leslie Duncan,
Deceased; Diane Eaglin, as Personal Representative and/or as a statutory heir
of the Estate of Robert Eaglin, Deceased; Earl Ellis, as Personal
Representative and/or as a statutory heir of the Estate of Leroy J. Ellis, Jr.,
Deceased; Earl J. Ellis; Robert D. Ervin; Guadalupe Escochea, Jr; Daley
Etienne; Alfred D. Fields; Rita Filmore, as Personal Representative and/or as a
statutory heir of the Estate of Sterling Filmore, Deceased; Reginald B.
Fitzgerald; W. G. Foehr; Bobbie Martin, as Personal Representative and/or as a
statutory heir of the Estate of Raymond L Ford, Deceased; Manuel Fraga; Harold
J. Francis, Carlton Franklin, as Personal Representative and/or as a statutory
heir of the Estate of George Franklin, Deceased; Ted Frazier, as Personal
Representative and/or as a statutory heir of the Estate of John Frazier,
Deceased; Rodney Freeman; Oliver R. Galloway; Eddie B. Garcia; Jose B. Garcia;
Samuel Gardner; Donald R. Gilder; David Gipson; Alma Gobar, as Personal
Representative and/or as a statutory heir of the Estate of Whitney Gobar,
Deceased; Joseph C. Gollub; Vincente Gomez; Leonard Green; Paul Green; Jose
Guerra; Clifton J. Gulliory; Felipe Gusman; Joseph Hall, Jr.; Deborah Harris,
as Personal Representative and/or as a statutory heir of the Estate of Fredrick
Harris, Deceased; Brenda J. Hawkins, as Personal Representative and/or as a
statutory heir of the Estate of Nathaniel W. Hawkins, Deceased; Melvin R.
Hayward; Candelario Hernandez; John E. Hollie, Jr.; Mary K. Hooper, as Personal
Representative and/or as a statutory heir of the Estate of E. D. Hooper,
Deceased; Kenneth W. Hope, Sr.; Shelton D. Hope; Hoover L. Hughes; Ronald W.
Hunter; Glen Hutchinson; John Paul Jackson; Lester Janice; Joseph Janice, as Personal
Representative and/or as a statutory heir of the Estate of Toney Janice,
Deceased; Donnie Jefferson; Roy Jefferson; Bennie E. Johnson; Bernard Johnson;
Donald S. Johnson; Jimmy Johnson; Johnny E. Johnson; Larry Johnson; Robert
Johnson, Jr.; Robert H. Johnson; Ronnie Johnson; Wallace Johnson; Gilbert J.
Jones, Joseph C. Jones; Larry Jones, McAlvin Jones; Willie Jones; Robert W.
Joseph, Sr., Charles E. Jr.; Marion R. Kalinwski; Donald R. Keglea; Billy Ray
King, Weldon C. King, Jr.; Joseph A. Landry; Andrew H. Law; Otilia LeBlanc, as
Personal Representative and/or as a statutory heir of the Estate of Joseph W,
LeBlanc, Deceased; Earl R. Lewis; Angela Rucks, as Personal Representative
and/or as a statutory heir of the Estate of Isbay R. Lewis, III, Deceased;
Joseph D. Lewis, Jr.; Michael Lewis; Samuel Lewis; James L. Lilley; Theresa
Lloyd, as Personal Representative and/or as a statutory heir of the Estate of
Johnnie Lloyd, Deceased; Earl Love, Jr.; Junius L. Lyons; Glen Marburger;
Arnold Diaz Mares; Julian Martinez, Jr.; Victor Mathis; Wilber L. Mathis, Sr.;
Lynette Lanear, as Personal Representative and/or as a statutory heir of the
Estate of Alexander Mathews, Deceased; Charles E. Matthews; Clarence Mathews,
Jr.; Clarence Mathews, Jr., as Personal Representative and/or as a statutory
heir of the Estate of Clarence Mathews., Sr., Deceased; Jessie Mayes, Sr.;
Wilbert McGilber; John E. McGowan; Lonzo McGrew; Ronald L. McGuire; Billy Ray
McKenzie; Ralph E. McKinley; Arthur McKnight; Theodore R. McKnight; Carl Meier;
Arvin Mitchell; Ronald J. Morale; Johnny R. Morales, Jr.; Ernesto T. Moreno;
Juan F. Moreno; Wayne Moten, Sr.; Charles E. Nash; Charles E. Neal; Merida
Newsome; Edward Nixon; Talbert M. North, Jr.; Jose Favian M. Ortjz; Anthony W.
Page; A. B. Page; James E. Page; Percy Page; Richard A. Parker; Bobby E.
Pelmore; Juan M. Pena; Milton Petties; Rodney C. Pitre; David R. Potter;
Frances Prince, as Personal Representative and/or as a statutory heir of the
Estate of Earnest Prince, Deceased; Larry W. Prince; Donald G. Quarles, Sr.;
Thomas L. Quarles; Elyne Rackel, as Personal Representative and/or as a
statutory heir of the Estate of Elmo E. Rackel, Deceased; Jimmy D. Ray; Douglas
B. Reynolds; Bonnie Richards, as Personal Representative and/or as a statutory
heir of the Estate of James Richards, Deceased; Dwight B. Richardson; Eugene C.
Richardson; Lindall Roark; Jackie C. Robertson; Ignacio Rodriguez; Elmer T.
Rogerson; Frances Ross, as Personal Representative and/or as a statutory heir
of the Estate of Albert Ross, Deceased; Reberto S. Saldivar; Raymond C.
Sauceda; James Savoie; Leon P. Savoy; Douglas W. Scott; Don E. Simmang; Leon
Singleton; Elvin Skinner; Gregory H. Smith; Sydney Smith, Jr.; Willie F. Smith,
Sr.; Federico Soto, Sr.; Carlton J. Soularie; Cloussy J. Soularie, Jr.; Cloussy
Soularie., Sr.; Clarence L. Spann; Ardis Stanley; Anthony W. Stephens; Ricky
Stephens; Jerry W. Stickman; Clifford R. Stoot; George Tate; Raymond Tate;
Wardell Taylor; Joseph L. Thibodeaux; John H. Thompson; Robert Thompson, Jr.;
Michael R. Tillmon, Antonio Torres, Jr.; Alfredo D. Tovar; Richard Tunwar;
Kenneth R. Tuttle; Curtis Vanschoubroek; Lois M. Walker, as Personal
Representative and/or as a statutory heir of the Estate of British L. Walker,
Sr., Deceased; Carolyn Walker, as Personal Representative and/or as a statutory
heir of the Estate of Jack P. Walker, Deceased; Jessie Walker, Jr.; Wilburn R.
Wallace; Lena Johnson, as Personal Representative and/or as a statutory heir of
the Estate of Clifton Washington, Deceased; Lavern Washington; Charles B.
Weatherspoon; Jessie James Weeks; Charlotte Currie, as Personal Representative
and/or as a statutory heir of the Estate of Richard D. Whisenant, Deceased;
Stanley Whitaker; Al J. Williams; Earl H. Williams; Ivory Williams; John H.
Williams; Joseph E. Williams; Alfreda Levine‑Williams, as Personal
Representative and/or as a statutory heir of the Estate of Ronald J, Williams,
Deceased; Wallace Williams; Walter Williams, III; Willie D. Williams; Clarence
A. Willis; Charles Willridge; M. T. Wilson, Jr.; Clarence J. Wiltz; Cherie
Winfrey, as Personal Representative and/or as a statutory heir of the Estate of
Clifford Winfrey, Deceased; Arnett Wrencher; Clifton Wyatt, Sr.; Tilman
Zackery, Jr.; Joe D. Zamora; and Clarence Zenon, Jr.

 









[1]  Appellants=
full names are listed in an appendix to this opinion.





[2]  Anderson was a case brought under the Jones
Act, which expressly incorporates the relaxed FELA causation standard.  See
American Dredging Co. v. Miller, 510 U.S. 443, 456, 114 S.Ct. 981, 127
L.Ed.2d 285 (1994); Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d
654, 657 (Tex. App.CHouston [1st Dist.] 1998, no pet.).





[3]  A governmental agency finding that exposure to a
substance increases the risk of disease cannot generally be considered as
reliable evidence of causation in a tort case.  See Exxon Corp. v. Makofski,
116 S.W.3d 176, 188 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).